



Exhibit 2

INSTITUTE FOR JUSTICE

September 26, 2022

Texas Ethics Commission
P.O. Box 12070
Austin, TX 78711-2070

    Re: *Comments on Draft Advisory Opinion No. AOR-660*

Chair Kennedy and Commissioners:

### Introduction

The Institute for Justice ("IJ") is a national nonprofit, public interest law firm. Its mission is to end widespread abuses of government power and secure Americans' constitutional rights. As part of its work, IJ represents clients pro bono who seek to challenge election-related laws and regulations. Often, this litigation is undertaken on behalf of candidates or political committees. Recently, the Texas Ethics Commission (the "Commission") released a draft advisory opinion asserting that, in its judgment, these kinds of legal services can count as in-kind contributions subject to Texas' donation limits. *See* Tex. Ethics Comm'n Draft Op. No. AOR-660 ("Draft Advisory Opinion"). IJ submits the following comments, which apply to pro bono representation in civil rights suits (and not to situations where lawyers provide free legal services for the purposes of helping campaigns win).

The Commission's Draft Advisory Opinion is wrong. If the Commission were to adopt and enforce it, the Commission would be taking a position that conflicts with federal law and the United States Constitution, as definitively interpreted by the U.S. Supreme Court. The Commission's position plainly contradicts 42 U.S.C. § 1983 ("Section 1983"). The Commission's draft opinion also seeks to impermissibly restrict the First Amendment rights of public interest and pro bono attorneys, as well as candidates themselves. In short, the Draft Advisory Opinion is preempted by federal law and violates the U.S. Constitution—so the Commission should reject it.

**I.    The Draft Advisory Opinion Is Preempted by Federal Law.**

The Commission's proposed opinion, if adopted, would be preempted by federal law. Section 1983 allows a plaintiff to sue state officials and entities that violate her rights. In its Draft Advisory Opinion, the Commission proposes a scheme that would, in effect, insulate itself from suits under this federal statute by a certain class of plaintiffs. But State officials cannot exempt themselves from federal causes of action and liability. *See generally* U.S. Const. art. VI, cl. 2. (the Supremacy Clause, stating that "[t]his Constitution, and the Laws of the United States. . . shall be the supreme Law of the Land. . . any Thing

Texas Ethics Commission
September 26, 2022
Page 2

in the Constitution or Laws of any State to the Contrary notwithstanding"). The Commission's position is preempted by Section 1983.

Congress passed Section 1983 to ensure that Americans could vindicate their constitutional rights against state and local officials who violated them. Passed as part of the Ku Klux Klan Act, Section 1983 seeks to open up the courts to Americans who believe their constitutional rights have been violated. *See generally*, Enforcement Act of 1871, Pub. L. No. 42-22, 17 Stat. 13 (codified in part at 42 U.S.C. § 1983); *Monroe v. Pape*, 365 U.S. 167, 171 (1963). Congress passed this section against a troubling backdrop. Klan violence was widespread, and lawless conditions had taken hold throughout the South. States were unable or unwilling to allow access to their courts for freedmen and union sympathizers who were targets of Klan violence. *See Pape*, 365 U.S. at 173–78 (detailing Congressional findings that Southern governments had been overwhelmed, and in many cases co-opted, by the Klan). As the Supreme Court held, Congress passed Section 1983 to specifically provide a federal remedy when state and local governments refused to honor federal rights. *Id.* at 174. The Court further held that one of the core purposes of Section 1983 was to override state law that prevented citizens from vindicating their rights. *Id.*

The Commission's Draft Advisory Opinion attempts to insulate the Commission from suits brought by candidates and committees pursuant to Section 1983 who cannot afford private attorneys to pursue what are often expensive, resource-intensive suits, many of which will be the subject of (often several) appeals. The Commission's draft opinion maintains that any "[l]egal services provided without charge to candidates or political committees are in-kind contributions." IJ is a non-profit, tax-exempt corporation under 26 U.S.C. § 501(c)(3) of the Internal Revenue Code. As such, it is prohibited from making any political donations. Thus, IJ would be barred from providing any pro-bono representation to a candidate or political committee who challenges a law or regulation enforced by the Commission—even if the purpose of that representation is to vindicate the candidate or committee's federal constitutional rights. This will mean that, far too often, these candidates and committees will not be able to vindicate their rights as Congress intended.[1]

IJ typically calculates the value of its services at around $300–450 per hour. A constitutional challenge to a campaign finance regulation can, and usually does, consume hundreds of hours of work. It is likely that few candidates or committees have the financial resources to pay for these services. In other words, it would be impossible for the vast majority of candidates and committees to challenge the constitutionality of laws enforced by the Commission. This would protect the Commission from constitutional challenges to

---

[1] IJ has represented numerous local candidates and political committees in legal challenges on a pro bono basis. In the United States Supreme Court, IJ successfully challenged Arizona's punitive system of funding campaigns with taxpayer money (https://ij.org/case/arizona-free-enterprise-clubs-freedom-club-pac-v-bennett/). IJ also put an end to the State of Washington Public Disclosure Commission's attempt to frustrate federal civil rights law and secured the ability to provide, and receive, legal help to vindicate fundamental constitutional rights (https://ij.org/case/ijvspdc/). IJ has also vindicated political speech rights in Colorado (https://ij.org/case/sampson-v-buescher/), and Florida (https://ij.org/case/broward-coalition-v-browning/), among other jurisdictions.

Texas Ethics Commission
September 26, 2022
Page 3

the laws it enforces and insulate it from Section 1983 suits. Because the Draft Advisory Opinion would effectively bar many candidates and committees from remedies Congress intended them to have, federal law preempts it.

A state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 220 (1983) (quotation marks omitted). The purpose of Congress "is the ultimate touchstone" of any preemption analysis. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quotation marks omitted). When a state law insulates officials from Section 1983 liability, the law is invalid because it frustrates Congress's goal of providing a remedy for constitutional violations. For instance, in *Haywood v. Drown*, the Supreme Court considered a New York law which exempted prison guards from Section 1983 suits in state court. 556 U.S. 729, 731 (2008). Even though the federal courts remained open for these actions, the Court invalidated the law. *Id.* at 736. The Court made clear that states "lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies." *Id.* The Court further reasoned that the state's restriction on these types of actions defied "Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages." *Id.* at 737.

The Commission's Draft Advisory Opinion goes even farther than New York's law from *Haywood*. It would preclude not just state court litigation, but virtually *all* Section 1983 suits against the Commission that are filed by a candidate or committee. It does so in two ways.

First, the Draft Advisory Opinion operates to nullify an entire federal cause of action for a class of plaintiffs in Texas. This would create an obstacle to the goal of Section 1983. When candidates cannot sue the Commission, then the Commission can violate their constitutional rights without fear of consequence. Although the Commission argues a state statute commands this result, the entire purpose of Section 1983 was to bypass state law *because* it did not adequately protect federal rights. Section 1983 cannot only extend as far as the state allows. Section 1983 would have been a useless statute from its inception if the states could simply bar suits.

Second, the Commission's Draft Advisory Opinion functionally attempts to strip federal courts of jurisdiction. The Commission's reading of Texas law will make it illegal for the pro bono representation (and therefore the case) to continue. This effectively prevents federal courts from hearing cases they otherwise have authority to hear, and plaintiffs who would otherwise be entitled to review in federal court will be thrown out because of a *Texas* rule or statute. States cannot strip federal courts of jurisdiction. *Cf.* U.S. Const. art. III, § 1 ("[T]he supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the *Congress* shall make.") (emphasis added). Nor can the Commission attempt to divest a *federal* court of its ability to hear a *federal* constitutional challenge brought under *federal* law.

Texas Ethics Commission
September 26, 2022
Page 4

In sum, the proposed rule prevents pro bono attorneys from representing candidates and committees and prevents candidates and committees from vindicating their rights under federal law. It places Texas law directly in the path of the achievement of Congress's goals. The U.S. Constitution's Supremacy Clause thus forecloses it.

## II. The Draft Advisory Opinion, If Adopted, Would Violate the First Amendment of the United States Constitution.

The Draft Advisory Opinion also violates the First Amendment, for at least two reasons. First, the Commission has not identified any, much less a compelling, justification for its position that it can restrict protected First Amendment activity. Second, the Commission's opinion results in impermissible content-based and speaker-based restrictions on speech.

### A. The Draft Advisory Opinion fails strict scrutiny.

"[C]ollective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *In re Primus*, 436 U.S. 412, 426 (1978) (quotation marks omitted). This is especially true for public interest firms, where "litigation is not a technique of resolving private differences" but a "form of political expression" and "political association." *NAACP v. Button*, 371 U.S. 415, 429 (1963); *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 634 (1995) ("There are circumstances in which we will accord speech by attorneys on public issues and matters of legal representation the strongest protection our Constitution has to offer."). The association of an attorney with pro bono civil-rights plaintiffs "comes within the generous zone of First Amendment protection reserved for associational freedoms." *Primus*, 436 U.S. at 431.

Laws that chill these rights are subject to strict scrutiny. *Button*, 371 U.S. at 434–35. The state cannot escape this scrutiny merely by making it very difficult or expensive to exercise the right. *See U.S. Term Limits v. Thornton*, 514 U.S. 779, 829 (1995) ("The Constitution 'nullifies sophisticated as well as simple-minded modes' of infringing on constitutional protections.") (quoting *Lane v. Wilson*, 307 U.S. 268, 275 (1939)). And in free speech cases, the government must justify its policy in the real world. "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *McCutcheon v. FEC*, 572 U.S. 185 (2014) (citation and quotation marks omitted). The government cannot justify restrictions with "[m]ere conjecture." *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 392 (2000). Rather, it "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

Here, the Commission cannot identify even one concrete harm it suffers from the existence of pro bono legal representation. In its four-page opinion, the Commission lays out three sections of analysis—which deal entirely with statutory interpretation and precedent. The first section interprets Commission rule 20.66 to treat pro bono legal services as in-kind contributions that fall outside that rule's exception for "discount[s] to a candidate, officeholder or political committee[,]" when such discounts reflect "the usual

Texas Ethics Commission
September 26, 2022
Page 5

and normal practice of the industry[.]" The second section interprets Texas Election Code Section 251.001 to mean that pro bono services are contributions if they are "in connection" with a campaign. The last section does no more than offer a cursory look at case law and conclude that pro bono legal services are "in connection" with a campaign if the plaintiff only has standing to sue because of his status as a candidate or committee. None of these sections grapple with any underlying legal issues or real-world justifications for the policy.

### B. The Advisory Opinion presents an unconstitutional content-based and speaker-based restriction on speech.

The Draft Advisory Opinion also proposes unconstitutional content-based and speaker-based discrimination.

The Supreme Court has made clear that the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972). Laws are content based when they cannot be "justified without reference to the content of the regulated speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). A content-based restriction is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Id.* at 163; *see also Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (strict scrutiny is a "demanding standard"). And content-based restrictions are subject to strict scrutiny "regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993).

Restrictions on speech are content based when they turn on what the speech is. In *Reed*, the Supreme Court held a sign code unconstitutional because the only variable controlling how signs were regulated was what they promoted. 576 U.S. at 159. The Court reasoned that the regulation was content based because law enforcement had to look at the sign, read it, and interpret its message before deciding whether it violated the law. *Id.* at 164. As in *Reed*, the advisory opinion turns on the content of speech.

Under the Commission's Draft Advisory Opinion lawyers are free to file any lawsuit they want but are only subject to contribution limits if the lawsuit filed on behalf of a candidate or campaign committee challenges a rule or statute enforced by the Commission. Thus, the *content* of the lawsuit controls if it is regulated or not. Even if the frame of reference is limited to lawyers who represent candidates or campaign committees, the law is still content based. Under the Commission's interpretation, a lawyer can represent a candidate or committee pro bono for any reason, and file any lawsuit, so long as the lawsuit is not dependent on the candidate's status. A slip and fall lawsuit filed by a pro bono lawyer on behalf of a candidate against a venue that hosted an event is not a contribution, but one filed to challenge restrictions enforced by the Commission is. By the Commission's own terms, the content of the lawsuit (whether or not standing in the particular suit is dependent on the plaintiff being a candidate) controls how tightly it is regulated.

Texas Ethics Commission
September 26, 2022
Page 6

The Draft Advisory Opinion also seeks to impose a speaker-based restriction. Strict scrutiny also applies to speaker-based restrictions when, as here, "the legislature's speaker preference reflects a content preference." *Turner Broad. Sys., Inc. v. FEC*, 512 U.S. 622, 658 (1994); *accord Reed*, 576 U.S. at 169. Entities who are *not* candidates and committees can speak and associate with pro bono attorneys, but candidates and committees cannot. Similarly, pro bono attorneys can represent other types of entities, but not candidates and committees.

Because the Commission's Draft Advisory Opinion singles out content and is speaker-based discrimination, it triggers strict scrutiny. And as noted above, the Commission has not identified in its draft opinion any compelling interest it seeks to advance and focuses almost solely on questions of statutory interpretation. Simply complying with state law is not a compelling state interest (especially when that state law conflicts with federal law). And even if a regulation serves a compelling government interest, its imprecise scope fails the required narrow tailoring and would not pass constitutional muster. For instance, the Draft Advisory Opinion makes no effort to determine if the litigation would actually help the candidate or committee in an election. Often, this type of litigation under Section 1983 and the U.S. Constitution continues long after the candidates or committees have stopped competing in an active election.

The Commission's position laid out in the Draft Advisory Opinion would fail strict scrutiny because it is not narrowly tailored to achieve a compelling government interest. It conditions being a candidate on forfeiting the right to petition the government and challenge its laws. The Supreme Court has held that the right to petition is not some secondary, subsidiary right. It is a core First Amendment freedom, that should be construed broadly. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition."); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011) ("Both speech and petition are integral to the democratic process . . . The right to petition allows citizens to express their ideas, hopes, and concerns to their government . . . the right to petition is generally concerned with expression directed to the government seeking redress of a grievance.").

Despite these clear pronouncements by the Supreme Court, the Commission's Draft Advisory Opinion would force candidates to waive their rights. And the opinion's logic, if taken seriously, is entirely circular. Rules enforced by the Commission can only be challenged by those who have standing to do so. Candidates and committees are the only entities who have standing to challenge certain rules. Thus, once a plaintiff has met the necessary condition to establish standing, he is then immediately prevented from continuing with his suit according to the Draft Advisory Opinion. This is because the criteria that establishes standing (status as a candidate) also makes any pro bono representation completely illegal. Simply, becoming a candidate in Texas would mean forfeiting constitutional rights and being subject to the whims of the Commission.

Texas Ethics Commission
September 26, 2022
Page 7

Besides transparent incompatibility with the U.S. Constitution and Section 1983, the Draft Advisory Opinion makes no sense. The Commission does not only regulate candidates for public office. It also regulates lobbyists, legislators, the Texas Facilities Commission, and the Office of the Texas Comptroller, as well as other state agencies. But only those who run for office are restricted in what legal representation they can receive. Only those who run for office forfeit their right to receive the same services in order to challenge the Commission's enforcement against them. In essence, the Draft Advisory Opinion results in the Commission punishing running for office and only running for office. Any hypothetical ethical or corruption concerns somehow cease to exist when lobbyists instead of candidates use pro bono legal services. This, of course, reveals the trouble at the heart of the Commission's Draft Advisory Opinion. There are no ethical or corruption concerns identified, nor could there be.

It is no defense that candidates could pay for the same legal services they receive pro bono. The state cannot condition the exercise of a core First Amendment right on the payment of money to a third party. As outlined above, public-interest litigation itself is a form of First Amendment expression. Forcing clients to pay would reduce the First Amendment rights of both candidates and public-interest law firms like IJ.

## Conclusion

In 2015, the State of Washington Public Disclosure Commission ("PDC") sought to apply a similar interpretation of Washington's campaign finance law. IJ sued on behalf of a client and won that case on summary judgment. *See* Exhibit A. The PDC chose not to appeal and, shortly thereafter, its Executive Director resigned.

Here, the Commission's Draft Advisory Opinion similarly attempts to restrict federal law and violates the U.S Constitution. The Commission can chart a different path than Washington's PDC, and it should do so by rejecting the Draft Advisory Opinion.

INSTITUTE FOR JUSTICE

Arif Panju
Managing Attorney
apanju@ij.org

13-2-10152-7   44174236   ORGSJ   02-23-15

The Honorable Katherine M. Stolz
Hearing Date: February 20, 2015
Hearing Time: 9:00AM

FILED
DEPT. 2
IN OPEN COURT
FEB 20 2015
Pierce County Clerk
By _____ DEPUTY

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR PIERCE COUNTY

INSTITUTE FOR JUSTICE, *et al.*,

Plaintiffs,

v.

STATE OF WASHINGTON, *et al*,

Defendants.

No. 13-2-10152-7

[~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## ORDER

THIS MATTER came before the Court on Plaintiffs' Motion for Summary Judgment. The Court reviewed the following materials submitted by the parties:

1. Plaintiffs' "Civil Rights Complaint for Declaratory and Injunctive Relief";

2. Defendants' "Answer of Defendants and Affirmative Defenses";

3. "Plaintiffs' Motion for Summary Judgment and Memorandum in Support Thereof"

    and the accompanying

    a. "Parties Stipulation as to Undisputed Facts" and the exhibits thereto;

    b. "Declaration of Barnaby Zall in Support of Plaintiffs' Motion for Summary Judgment";

    c. "Declaration of Steven Anderson in Support of Plaintiffs' Motion for

[~~PROPOSED~~] Order Granting Plaintiffs'
Motion for Summary Judgment- 1

INSTITUTE FOR JUSTICE
10500 NE 8th Street, Suite 1760
Bellevue, Washington 98004
(425) 646-9300

Summary Judgment" and the exhibit thereto;

    d. "Declaration of Robin Farris in Support of Plaintiffs' Motion for Summary Judgment" and the exhibits thereto;

    e. "Declaration of Jeffrey Paul Helsdon in Support of Plaintiffs' Motion for Summary Judgment" and the exhibits thereto; and

    f. "Affidavit of Paul V. Avelar in Support of Plaintiffs' Motion for Summary Judgment" and the exhibits thereto;

4. "Defendants' Opposition to Plaintiffs' Motion for Summary Judgment" and the accompanying

    a. "Declaration of Linda Dalton in Opposition to Plaintiffs' Motion for Summary Judgment" and the exhibits thereto;

    b. "Declaration of Tony Perkins in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment" and the exhibits thereto;

    c. "Declaration of Lori Anderson in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment" and the exhibit thereto; and

    d. "Declaration of Marcus S. Owens in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment" and the exhibits thereto;

5. "Plaintiffs Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment" and the accompanying

    a. "Reply Declaration of Barnaby Zall in Support of Plaintiffs' Motion for Summary Judgment" and the exhibits thereto;

    b. "Reply Declaration of Steven Anderson in Support of Plaintiffs' Motion for Summary Judgment"; and

[PROPOSED] Order Granting Plaintiffs'
Motion for Summary Judgment- 2

INSTITUTE FOR JUSTICE
10500 NE 8th Street, Suite 1760
Bellevue, Washington 98004
(425) 646-9300

  c. "Affidavit of Paul V. Avelar in Support of Plaintiffs' Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment" and the exhibits thereto; and

6. The filings and pleadings herein.

The Court, having considered these admissions and hearing oral argument of the parties, now ORDERS, ADJUDGES, AND DECREES that:

Plaintiffs' Motion for Summary Judgment is **GRANTED**. Plaintiffs present a justiciable controversy and have standing to bring this action. Defendants' treatment of free legal assistance to a political committee in a federal civil rights lawsuit as a "contribution," as that term is defined in RCW 42.17A.005(13), is unconstitutional under the U.S. Constitution. Defendants are permanently enjoined from applying any cap on the amount of free legal services a political committee may receive in a federal civil rights case. Defendants are also permanently enjoined from requiring Recall Dale Washam or any other political committee to report free legal services provided by the Institute for Justice, Oldfield & Helsdon PLLC, or any other attorney in a federal civil rights lawsuit as a campaign contribution. Plaintiffs are prevailing parties for purposes of attorneys' costs and fees.

SO ORDERED this 20th day of Feb. 2015.

FILED
DEPT. 2
IN OPEN COURT
FEB 20 2015
Pierce County Clerk
By _____ DEPUTY

Judge Katherine M. Stolz

[PROPOSED] Order Granting Plaintiffs'
Motion for Summary Judgment- 3

INSTITUTE FOR JUSTICE
10500 NE 8th Street, Suite 1760
Bellevue, Washington 98004
(425) 646-9300