

**Exhibit 3**

September 26, 2022

Mr. J.R. Johnson
Executive Director
Texas Ethics Commission
Sam Houston Bldg.
201 East 14th St., 10th Floor
Austin, TX 78701

Re: Proposed Advisory Opinion on Texas Government Code 253.094 (AOR-660)

Dear Mr. Johnson,

The American Civil Liberties Union of Texas ("ACLU of Texas") submits this letter regarding the proposed advisory opinion on Section 253.094 of the Texas Government Code in response to AOR-660. The Commission has proposed an advisory opinion ("Opinion") that concludes pro bono legal services to candidates or political committees constitute "political contributions" and are thus barred by Section 253.094 of the Texas Government Code. The Opinion, if adopted, would run afoul of the First Amendment because it does not recognize any exception for nonprofit organizations that defend civil rights and civil liberties while regularly providing pro bono legal services, which may include representation of political candidates or committees where the services do not influence an election. We urge the Texas Ethics Commission to acknowledge such an exception in order to ensure that its guidance comports with the Constitution.

**The First Amendment Protects the Mission-Driven Litigation of Pro Bono Legal Providers**

The Supreme Court has observed that for civil rights organizations, including "the ACLU . . . litigation is not a technique of resolving private differences; it is a form of political expression and political association."[1] The Opinion ignores this principle, sweeping broadly in scope. It prohibits all pro bono legal services related to a campaign, without any consideration of whether an organization regularly provides pro bono legal services. Accordingly, the Opinion does not recognize any exception for nonprofit civil rights organizations that are protected by the First Amendment.

As it stands, the Opinion's sweeping prohibition on pro bono legal services severely limits accessible legal advocacy against civil rights violations related to elections even where those

---

[1] *In re Primus*, 436 U.S. 412, 428 (1978) (cleaned up); *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963); *id.* at 442 ("[H[ere the entire arrangement employs constitutionally privileged means of expression to secure constitutionally guaranteed civil rights.").

services are not for the purpose of influencing an election, but are instead closely tied to the organization's mission.[2] This violates the First Amendment.[3]

**Relevant Law Also Indicates an Exception for Pro Bono Legal Services is Necessary**

Instead of adopting an unconstitutional interpretation of Section 253.094 of the Texas Government Code in response to AOR-660, the Committee should interpret the existing statute to provide an exception for nonprofit civil rights organizations. Indeed, such an interpretation is readily available from the plain language of the statute. The Opinion acknowledges this statutory exception for discounts to candidates where "the terms of the transaction reflect the usual and normal practice of the industry and are typical of the terms that are offered to political and non-political persons alike."[4] However, the Opinion broadly defines the relevant industry at issue as *all* legal services providers.

The Commission should reconsider the scope of this industry exception to acknowledge the uniquely critical role of civil rights organizations and their missions to advocate for civil rights through legal services. The ACLU of Texas's mission is to defend and preserve rights and liberties in the courts, legislature, and in the community—including protecting voting rights and democracy.[5]

Recognizing an exception for civil rights nonprofits to provide pro bono legal services is not only required by the Constitution and in keeping with the plain language of the statute, but it is also consistent with the distinguishment of civil rights organizations from the broader for-profit legal industry across other areas of law.

For instance, "[t]he First Amendment prohibits the government from enacting solicitation restrictions that prevent attorneys from offering their services pro bono to individuals or groups."[6] Accordingly, the Texas Disciplinary Rules of Professional Conduct for lawyers distinguish the nonprofit legal industry from rules that apply to the rest of the for-profit legal industry. Specifically, the prohibition on solicitation "does not apply to the activities of lawyers working for public or charitable legal services organizations" because they are not "substantially motivated by

---

[2] The Opinion separately discusses a prohibition on pro bono legal services pertaining to a particular candidate or cause in order to influence the outcome of an election. However, AOR-660 only requests an opinion regarding litigation challenging the constitutionality or interpretation of a generally applicable law. Only in the latter case is the ACLU of Texas seeking an exception to provide pro bono legal services. Such an exception is necessary for the ACLU of Texas to pursue its mission through litigation. *See, e.g.*, *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752 (4th Cir. 2010) (ACLU served as counsel for the South Carolina Green Party and a disqualified candidate for state office, among others); *Green Party of Arkansas v. Martin*, 649 F.3d 675, 677 (8th Cir. 2011) (ACLU served as counsel for the Arkansas Green Party).

[3] *In re Primus*, 436 U.S. at 437–38 ("In the context of political expression and association, however, a State must regulate with significantly greater precision.").

[4] 1 Tex. Admin. Code § 20.66.

[5] *In re Primus*, 436 U.S. at 427 ("[T]he ACLU has as one of its primary purposes the rendition of legal services." (internal quotation marks omitted)).

[6] *S. Christian Leadership Conf. v. Supreme Ct. of State of La.*, 252 F.3d 781, 789 (5th Cir. 2001).

pecuniary gain."[7] This differentiation reflects the unique importance of access to pro bono legal services, which is elevated above the normal concerns about solicitation in the for-profit legal industry. First Amendment concerns here similarly require an exception for nonprofit civil rights organizations.

The observation that nonprofit legal services providers are not "substantially motivated by pecuniary gain" in the Rules of Professional Conduct further reflects a common understanding that these pro bono services are not associated with financial gain.[8] The Supreme Court has also recognized the lack of financial benefit from taking on civil rights cases, highlighting that pro bono services are necessary to provide equitable access to legal services.[9] This is true even if an organization incurs costs and fees associated with litigation.[10] Civil rights organizations must legally advocate for civil rights precisely because there is not a financial motivation for the for-profit legal industry to do so instead—necessitating an exception within the definition of contributions.

Finally, the necessity of these services is reflected in the Internal Revenue Code, which allows nonprofit civil rights organizations to maintain their tax-exempt status even when they participate in advocacy in the context of an election. Internal Revenue Code Section 501(c)(3) authorizes tax exemptions for charitable non-profit organizations on the condition that the organization "does not participate in, or intervene in . . . any political campaign on behalf of (or in opposition to) any candidate for public office."[11] Yet those same regulations decidedly *permit* "issue advocacy," which includes defending "human and civil rights secured by law." 26 C.F.R. § 1.501(c)(3)-1(d)(2). In the context of political contributions, there should similarly be an exception for pursuing a nonprofit's civil rights mission through litigation.

---

[7] Tex. Disc. R. Prof. Cond. 7.01 Comment.

[8] *See id.*

[9] *Button*, 371 U.S. at 443 ("Resort to the courts to seek vindication of constitutional rights is a different matter from the oppressive, malicious, or avaricious use of the legal process for purely private gain. Lawsuits attacking racial discrimination . . . are neither very profitable nor very popular. They are not an object of general competition among Virginia lawyers; the problem is rather one of an apparent dearth of lawyers who are willing to undertake such litigation.").

[10] *In re Primus*, 436 U.S. at 429–30 ("Contrary to appellee's suggestion, the ACLU's policy of requesting an award of counsel fees does not take this case outside the protection of *Button*. . . . In any event, in a case of this kind there are differences between counsel fees awarded by a court and traditional fee-paying arrangements which militate against a presumption that ACLU sponsorship of litigation is motivated by considerations of pecuniary gain rather than by its widely recognized goal of vindicating civil liberties.").

[11] The IRS's regulations define such "participation or intervention" to include "the publication or distribution of written or printed statements or the making of oral statements on behalf of or in opposition to such a candidate." 26 C.F.R. § 1.501(c)(3)-1(c)(3)(iii); *see also* 26 C.F.R. § 1.501(c)(3)-1(b)(3)(iii) (applying the restriction to § 501(c)(3) organizations).

**Conclusion**

Civil rights nonprofits are consistently recognized under the First Amendment as constitutionally protected legal services providers, with unique status in many areas of law. The ACLU of Texas urges the Commission to also recognize the unique role that such civil rights organizations play, as distinguished from the for-profit legal industry, by acknowledging an exception for them under Section 253.094 of the Texas Government Code.

Sincerely,

Ashley Harris
Thomas Buser-Clancy
Edgar Saldivar
Adriana Piñon
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
aharris@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org