# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2025

Lyle W. Cayce
Clerk

————————

No. 24-50712

————————

INSTITUTE FOR FREE SPEECH, *a nonprofit corporation and public interest law firm,*

*Plaintiff—Appellant,*

*versus*

J. R. JOHNSON, *in his official and individual capacities as Executive Director of the Texas Ethics Commission;* MARY KENNEDY, *Commissioner in her official capacity;* CHRIS FLOOD, *Commissioner in his official capacity;* RICHARD SCHMIDT, *Commissioner in his official capacity;* RANDALL ERBEN, *Commissioner in his individual and official capacities;* CHAD CRAYCRAFT, *Commissioner in his individual and official capacities;* PATRICK MIZELL, *Commissioner in his individual and official capacities;* JOSEPH SLOVACEK, *Commissioner in his individual and official capacities;* STEVE WOLENS, *Commissioner in his individual and official capacities,*

*Defendants—Appellees.*

————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-1370

————————————————

Before Elrod, *Chief Judge*, Engelhardt, *Circuit Judge*, and Guidry, *District Judge*.[*]

Jennifer Walker Elrod, *Chief Judge*:

The Institute for Free Speech, an organization that offers *pro bono* legal services for First Amendment litigation, appeals the dismissal of its complaint for lack of Article III standing.  IFS alleges that it wishes to enter an agreement for *pro bono* legal services with a Texas politician and a political committee, that such agreement would subject it to criminal liability under the Texas Election Code, and that it has refrained from entering into an agreement for fear of prosecution.  IFS asserts that these claims sufficiently support pre-enforcement standing for its challenge against the Texas election law that prohibits its desired conduct.  IFS also contends that the district court erred in dismissing its individual-capacity claims for qualified immunity.  Because we agree with IFS that it has standing but disagree that it has met its burden to overcome qualified immunity, we REVERSE in part, AFFIRM in part, and REMAND.

I

IFS is a nonprofit corporation whose mission is to "promote and defend the political rights to free speech, press, assembly, and petition guaranteed by the First Amendment."  IFS carries out its mission in several ways, including engaging in "strategic litigation" and legal representation that it offers only on a *pro bono* basis.

IFS wishes to represent two clients in their challenges to a Texas election law, which requires certain political advertising signs to include a

---

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

government-prescribed notice.[1]  One prospective client, Chris Woolsey, serves on the Corsicana, Texas city council.  Woolsey "intends to run for re-election for his current seat" and to solicit money for that purpose "in the near future," and he also intends to print and post political advertising signs that will be subject to the Texas Election Code's signage requirement.

The other prospective client is the Texas Anti-Communist League, a registered General Purpose Committee under Texas law.  The League would like to participate in future Texas elections to support candidates or measures that "promote its mission of opposing the spread of communism, Marxism, or affiliated ideologies in Texas institutions."  It too intends to make political advertising signs that will be subject to Texas's signage requirement.  Both Woolsey and the League believe that the Texas signage requirement violates their First Amendment rights, and IFS would like to represent them on a *pro bono* basis in litigation challenging the law.

But IFS has refrained from doing so for fear of prosecution under Texas election law.  Under the Texas Election Code, it is a third-degree felony for a corporation to make any "political contribution," Tex. Elec. Code Ann. § 253.094(a), which includes contributions to a candidate or political committee intended to "be used in connection with a campaign for elective office or on a measure," *id.* § 251.001(3), (5).  "Contribution" is defined broadly as any "transfer of money, goods, services, or any other thing

---

[1] That law requires all political advertising signs for Texas political candidates to include the following notice:  "NOTICE: IT IS A VIOLATION OF STATE LAW (CHAPTERS 392 AND 393, TRANSPORTATION CODE), TO PLACE THIS SIGN IN THE RIGHT-OF-WAY OF A HIGHWAY."  Tex. Elec. Code Ann. § 259.001(a). Political advertising signs are defined as signs "designed to be seen from a road but do[] not include a bumper sticker."  *Id.* § 259.001(e).

of value and includes an agreement made or other obligation incurred . . . to make a transfer." *Id.* § 251.001(2).

Concerned that its proposed *pro bono* representation of Woolsey and the League would constitute a prohibited "contribution" under Texas law, IFS in 2022 sought an advisory opinion from the Texas Ethics Commission, an eight-member state commission responsible for enforcing the Texas Election Code. IFS explained in its request that it proposed to provide "pro bono legal services to candidates or political committees in Texas" to challenge the constitutionality of a Texas election law. IFS then asked whether Section 253.094 would prohibit its proposed representation. In its request, IFS insisted that reading the term "contribution" to include *pro bono* legal services would violate the First Amendment.

The Commission rejected IFS's argument. In a draft advisory opinion, the Commission interpreted *pro bono* legal services as an "in-kind contribution," meaning a contribution of goods or services rather than cash. That in-kind contribution, it continued, would be subject to the Texas Election Code's prohibition because the proposed *pro bono* services would be used "in connection with" a campaign. In its view, *pro bono* litigation that depends on a plaintiff's status as a candidate or political committee is connected with a campaign, bringing that litigation within Section 253.094's ambit.

At the request of IFS's president, the Commission then sought public comment on the draft advisory opinion. The American Civil Liberties Union of Texas and the Institute for Justice, two other organizations that engage in *pro bono* litigation, submitted letters to the Commission in support of IFS's argument.

In a September 2022 meeting, the Commission issued a revised opinion styled Ethics Advisory Opinion No. 580 that largely reached the

same conclusion as did the draft opinion. As the summary of the Advisory Opinion explains,

> Section 253.094 of the Texas Election Code prohibits corporations from making political contributions to candidates and political committees. Legal services provided without charge to candidates or political committees are in-kind contributions. When those services are given with the intent that they be used in connection with a campaign, they are in-kind campaign contributions. [IFS's] described legal services would be used in connection with a campaign because [IFS's] standing to pursue such a challenge would depend on its client's status as a candidate or political committee subject to the laws administered and enforced by the Commission.

The Commission adopted the Advisory Opinion at its December 2022 meeting by a 5–3 vote.

In August 2023, IFS sued the eight commissioners and the executive director of the Commission (collectively, the "Commissioners") seeking a declaratory judgment that Section 253.094 and the Advisory Opinion are unconstitutional under the First Amendment, both facially and as applied to IFS. IFS also requested permanent injunctive relief blocking the Commissioners from enforcing Section 253.094 and the Advisory Opinion against IFS and "other corporate legal-service provider[s]." Finally, IFS sought nominal damages from the executive director and the five commissioners who voted in favor of the Advisory Opinion, whom IFS sued in both their official and individual capacities. IFS sued the remaining three commissioners in their official capacities only.

The Commissioners moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and IFS moved for summary judgment. The district court granted the motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction because IFS lacked standing and its claims were

not ripe. Assuming that IFS had Article III standing, the district court also concluded that qualified immunity barred the individual-capacity claims, although sovereign immunity did not bar the official-capacity claims. It later entered a text order on its docket "mooting" IFS's motion for summary judgment in light of the dismissal.

IFS timely appealed. On appeal, IFS asserts that it has Article III standing to pursue its claims and that those claims are ripe for adjudication. IFS also argues that qualified immunity does not bar the individual-capacity claims and that the district court erred in denying as moot IFS's motion for summary judgment.

The Commissioners contest each of these arguments and raise two arguments of their own. First, they contend that the district court erred in concluding that sovereign immunity did not bar the official-capacity claims. Second, even if qualified immunity does not bar IFS's individual-capacity claims, the Commissioners assert that those claims are barred by quasi-judicial immunity.

## II

We review a district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction *de novo*. *T.B. ex rel. Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1050 (5th Cir. 2020). We may determine that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). As the party asserting jurisdiction, IFS "bears the burden of proof for a 12(b)(1) motion to dismiss." *Id.* (citation omitted).

No. 24-50712

We review a district court's Rule 12(b)(6) dismissal *de novo*. *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023). "To survive a [Rule 12(b)(6)] motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022) (citation omitted).

## III

We start with standing. *See Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("[I]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." (citation omitted)).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Texas v. Yellen*, 105 F.4th 755, 763 (5th Cir. 2024) (citation omitted).

## A

In pre-enforcement First Amendment challenges like this one, a plaintiff need not have experienced "an actual arrest, prosecution, or other enforcement action" to establish an injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Rather, "the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) (collecting cases); *see also Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir.), *cert. denied*, 145 S. Ct. 140 (2024). A plaintiff may demonstrate an injury in fact if it: "(1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) its intended future conduct is arguably proscribed by the law in question, and (3) the threat of future enforcement of the challenged law is substantial." *Yellen*, 105 F.4th at 764–65 (alterations adopted) (internal quotation marks and

citation omitted). Further, "[i]t is not hard to sustain standing for a pre-enforcement challenge" in cases involving political speech. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020).

We address each element in turn and agree with IFS that it has carried its burden to show a pre-enforcement injury.

### 1

To meet the first element, the plaintiff must "demonstrate a 'serious intent' to engage in proscribed conduct by taking some steps toward [its] desired activity." *Barilla*, 13 F.4th at 432 (citation omitted). Further, the plaintiff must show that the desired activity is "arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 161 (citation omitted).

A plaintiff may demonstrate "serious intent" in several ways. In *Speech First, Inc. v. Fenves*, for example, we concluded that several University of Texas students met the first element of pre-enforcement standing when they had plans to comment publicly on political matters but refrained from doing so out of fear that their comments would violate the University's speech policies. 979 F.3d at 331–32. Plaintiffs may also meet this element when they intend to engage in conduct in which they had previously engaged. *Driehaus*, 573 U.S. at 161–62; *Barilla*, 13 F.4th at 432.

Here, IFS describes, in detail, each step that it has taken towards its desired activity. As alleged in its complaint, IFS wishes to provide *pro bono* legal services to two named clients, Woolsey and the League. Woolsey intends to run for reelection, and the League is a registered Texas political action committee. Both prospective clients would like to print political advertising signs for their forthcoming political activities, but Texas law will require those signs to include a notice that, in their view, is unconstitutional. Neither Woolsey nor the League has sufficient financial means to hire private attorneys to challenge the Texas law, so both assert that if IFS offered them

*pro bono* legal representation, they would "gladly accept." IFS further alleges that this proposed representation fits squarely within its "mission and history of challenging other political speech restrictions." Crucially, though, IFS has "refrained from offering or providing any pro bono legal services to either Woolsey or the League, because the provision of such services would expose IFS, and its attorneys, to criminal and civil liability under the Texas Election Code."

These allegations sufficiently reveal IFS's "serious intent" to engage in constitutionally protected conduct. *See, e.g.*, *Speech First*, 979 F.3d at 331–32. IFS's identification of prospective clients interested in specific litigation constitutes precisely the "concrete plans" required at this stage. *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008); *see also Driehaus*, 573 U.S. at 161–62 (concluding that plaintiffs had pre-enforcement standing when they identified "specific statements they intend to make in future election cycles"). And because IFS and the prospective clients are all prepared to agree to *pro bono* representation, which would be unlawful under the Texas Election Code, IFS's proposed conduct is far from "imaginary or wholly speculative." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (citation omitted).

Furthermore, IFS has offered *pro bono* representation to candidates and political committees in the past, albeit in other states. IFS's brief lists three recent examples. This prior representation makes IFS's "serious intent" to engage in its proposed course of conduct all the more concrete. *Barilla*, 13 F.4th at 432; *Holder v. Humanitarian L. Project*, 561 U.S. 1, 15–16 (2010).

Finally, this conduct is at least "arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 161 (citation omitted). For example, political contributions implicate the First Amendment, even if "contributions lie

closer to the edges than to the core of political expression." *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 161 (2003); *see also Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 444–45 (5th Cir. 2014). The provision of nonprofit legal services likewise implicates the First Amendment. *NAACP v. Button*, 371 U.S. 415, 429 (1963) (describing nonprofit legal representation as a "form of political expression").[2]

The district court, however, concluded that IFS failed to meet the first element of pre-enforcement standing because IFS's complaint reveals only a "desire" to represent Woolsey and the League and that IFS could have alleged additional facts revealing that it has "taken steps to represent" them. The Commissioners press similar arguments.

But IFS's next step—signing representation agreements with Woolsey and the League for *pro bono* services—would be unlawful under Section 253.094 as that provision has been interpreted by the Commission. Thus, IFS is only one step removed from unlawful conduct, which our caselaw does not require it to take. *Cf. Zimmerman*, 881 F.3d at 389 (concluding that plaintiff had taken insufficient "steps" where plaintiff had not solicited any contributions and therefore was not close to reaching the challenged campaign-contribution limit).

IFS has met the first element for pre-enforcement standing.

---

[2] The Commissioners argue that neither *Beaumont* nor *Button* supports IFS's claims for relief. IFS disagrees. But we need not resolve this dispute here. At this stage, we do not consider "whether the plaintiff's legal theory is correct." *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 496 (5th Cir. 2024) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Instead, we ask only whether IFS's claims are "*arguably* affected with a constitutional interest," which they are. *Driehaus*, 573 U.S. at 161 (emphasis added) (citation omitted).

No. 24-50712

2

Under the second element, we agree with the district court that IFS's proposed conduct will run afoul of Texas law. The Commissioners do not dispute this conclusion. Accordingly, the second element is also met.

3

The third element requires that the plaintiff face "a substantial (or credible) threat of enforcement" if it engages in its proposed course of conduct. *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023). In pre-enforcement First Amendment challenges like this one, we "assume[] a credible threat of prosecution in the absence of compelling contrary evidence," so long as the challenged law is "non-moribund." *Ostrewich v. Tatum*, 72 F.4th 94, 102 (5th Cir. 2023) (citation omitted).

At this early stage, there is no contrary evidence that would undermine the assumption of future enforcement, nor is there any indication that Section 253.094 is dead-letter law. As recounted above, the Commission explained, in response to IFS's inquiry, that a corporation violates Section 253.094 of the Texas Election Code if it provides *pro bono* legal services to a candidate or political committee for campaign-related litigation. IFS plans to engage in this activity, and the Commissioners have never disclaimed their intent to enforce Section 253.094 against IFS if it does so. In fact, when asked at oral argument whether the Commission would pursue enforcement against IFS if it engaged in its desired activity, counsel for the Commissioners said only that enforcement would "depend[] on the facts of the case." The Commissioners' brief likewise declines to give assurances against enforcement. That is cold comfort to IFS.[3] *Barilla*, 13 F.4th at 433; *see also*

---

[3] The Commissioners maintain that IFS's theory of standing is identical to the plaintiffs' theory in *Joint Heirs Fellowship Church v. Akin*, 629 F. App'x 627 (5th Cir. 2015),

*Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) (concluding that the refusal to disavow prosecution carried "heavy weight" in pre-enforcement standing analysis). Further, the Commissioners' brief stresses the legitimacy of Section 253.094 and its necessity to preserve Texas campaign integrity, weighing further in favor of a threat of enforcement. *Barilla*, 13 F.4th at 433.

The Commissioners assert that this court has "recognized that the issuance of a state agency advisory opinion on its own without a history of enforcement is insufficient to establish an injury in fact." None of the cases that they cite support that proposition. Indeed, in one case that they cite, the "Board's interpretation of" campaign finance law in an advisory opinion revealed the "nonspeculative risk" of prosecution if the plaintiff engaged in its desired conduct. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660–61 (5th Cir. 2006). To be sure, *Carmouche* noted that the Board had previously enforced the statute, *id.*, but we have never read that case to require past enforcement, as the Commissioners suggest.[4] *See Speech First*,

_____

a case in which plaintiffs attempted to challenge a different subsection of the same statute at issue here. In *Akin*, though, we concluded that the plaintiffs could not show a credible threat of enforcement because the Commission "ha[d] *consistently proclaimed* that it [would] not enforce" Section 253.094 to prohibit the plaintiffs' proposed activities. *Id.* at 631–32 (emphasis added). Not so here.

[4] We note that Texas enforces Section 253.094, providing some evidence of past enforcement, although the state does not appear to have done so on the facts presented here. *See DeLay v. State*, 410 S.W.3d 902, 906 (Tex. App.—Austin 2013), *aff'd*, 465 S.W.3d 232 (Tex. Crim. App. 2014); *Ex parte Ellis*, 309 S.W.3d 71, 86 (Tex. Crim. App. 2010).

At any rate, requiring a history of past enforcement, as the Commissioners urge, would undermine the very purpose of pre-enforcement challenges, which is, well, to permit challenges pre-enforcement. *Driehaus*, 573 U.S. at 158 ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."). In fact, we recently concluded that a plaintiff had pre-enforcement standing to challenge a newly enacted law under which no enforcement action "ha[d] yet been taken." *Turtle Island Foods, S.P.C.*, 65 F.4th at 214, 218; *see also Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (concluding that plaintiff could raise a pre-

979 F.3d at 336 ("[A] lack of past enforcement does not alone doom a claim of standing." (citing *Carmouche*, 449 F.3d at 660)).

IFS has met the third element. Accordingly, it has met its burden to show a pre-enforcement injury.[5]

## B

Having concluded that IFS has an injury, we next turn to whether that injury is both "traceable" and "redressable." *Yellen*, 105 F.4th at 763 (citation omitted). To meet these dual elements, IFS must show that its injury is "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court,' and that it is 'likely, as opposed to merely speculative, that the injur[y] will be redressed by a favorable decision.'" *Parr v. Cougle*, 127 F.4th 967, 975 (5th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Generally, these elements are "easily satisfied" when the "[p]otential enforcement of the" challenged law causes injury, "and the injury could be redressed by enjoining enforcement of the" challenged law. *Carmouche*, 449 F.3d at 661; *see also Justice v. Hosemann*, 771 F.3d 285, 292 n.6 (5th Cir. 2014)

---

enforcement challenge even though the challenged provisions were "relatively new and the record contain[ed] little information as to enforcement or interpretation, other than the advice of the [defendant committee] to [the plaintiff]").

[5] The Commissioners also contend that IFS must allege a "perceptible impairment to its ability to achieve its mission" to show standing. In support of their argument, they cite this court's opinion in *Louisiana Fair Housing Action Center, Inc. v. Azalea Garden Properties, L.L.C.*, 82 F.4th 345 (5th Cir. 2023). The plaintiff's theory of injury in *Azalea Garden*, however, was that it had diverted resources from certain projects to combat the defendant's discriminatory practices. *Id.* at 353. "Diversionary injuries" are distinct from pre-enforcement First Amendment injuries. *See Tex. State LULAC v. Elfant*, 52 F.4th 248, 253, 256 (5th Cir. 2022) (discussing diversionary injuries and pre-enforcement injuries separately). IFS has not asserted a diversionary injury here, and therefore it need not show a "perceptible impairment" of its mission.

(explaining in the First Amendment pre-enforcement context that the "'traceability' and 'redressability' elements of the standing requirements are . . . clearly met on these facts"). The district court correctly concluded that IFS met each of these two elements.

Nevertheless, the Commissioners contend that federal law independently prohibits IFS's proposed course of conduct, meaning that its injury is not redressable. Specifically, they argue that the Internal Revenue Code prohibits 501(c)(3) nonprofit organizations like IFS from supporting political campaigns through *pro bono* representation.

True, redressability is undermined where an independent and unchallenged law also causes the plaintiff's injury. *See Maverick Media Grp. v. Hillsborough County*, 528 F.3d 817, 820 (11th Cir. 2008). But the Commissioners have cited no authority holding that the text of the Internal Revenue Code prohibits *pro bono* legal representation of political candidates, and it is unclear whether it would.

Under the Code, nonprofits may not "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3). While IFS's *pro bono* legal representation may facilitate a campaign, IFS does not propose to participate "in" the campaign *qua* campaign or directly endorse a candidate. In that way, this case is distinguishable from the case cited by the Commissioners, in which the Internal Revenue Service revoked a church's tax-exempt status for political advocacy. *See Branch Ministries v. Rossotti*, 211 F.3d 137, 139 (D.C. Cir. 2000) ("Four days before the 1992 presidential election, Branch Ministries, a tax-exempt church, placed full-page advertisements in two newspapers in which it urged Christians not to vote for then-presidential candidate Bill Clinton because of his positions on certain moral issues.").

No. 24-50712

Further, IFS responds that it and other nonprofit entities have represented non-Texas political candidates for years, as mentioned above. IFS regularly discloses these litigation activities to the Internal Revenue Service without issue. Accordingly, no other law appears to independently prohibit IFS from undertaking *pro bono* legal services of a candidate.

\*     \*     \*

In short, IFS has carried its burden to show that it has sustained a pre-enforcement injury, which both is traceable to the Commissioners' potential enforcement of Section 253.094 and redressable here. Accordingly, IFS has Article III standing.

## C

Having concluded that IFS has Article III standing, we now turn to ripeness, which the Commissioners assert is lacking.

Like standing, "ripeness is a constitutional prerequisite to the exercise of jurisdiction." *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017) (citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citation omitted).

In pre-enforcement challenges like this one, the standing and ripeness analyses overlap. *See Driehaus*, 573 U.S. at 157 n.5 ("As the parties acknowledge, the Article III standing and ripeness issues in this case 'boil down to the same question.'" (citation omitted)). Accordingly, IFS's pre-enforcement standing bolsters its assertion that its claims are ripe for

adjudication. *See Texas v. United States*, 497 F.3d 491, 496, 499 (5th Cir. 2007). We nevertheless address ripeness out of an abundance of caution.

The district court concluded that IFS's claims were not ripe because Woolsey and the League do not yet qualify as a political candidate and political committee, respectively, and thus Section 253.094 would not bar IFS's representation. The Commissioners make a thin attempt to defend this conclusion.

At the outset, it is not clear that either Woolsey or the League must currently qualify as a candidate or a committee, because the complaint alleges that they will be "in the near future." The Court in *Driehaus*, for example, held that plaintiffs had standing to challenge an Ohio election law that prohibited making "false statements" against candidates for public office when plaintiffs alleged that they "intend[ed] to make" such statements in future elections, even though they did not name any specific candidates against whom they would make such statements. *See* 573 U.S. at 151, 161–62. In *Wolfson v. Brammer*, the Ninth Circuit concluded that a plaintiff's pre-enforcement challenge to the Arizona Code of Judicial Conduct was ripe when he "expressed an *intention* to run for office in the future, and a desire to engage in two kinds of campaign-related conduct that is likely to be prohibited by the" Arizona Code. 616 F.3d 1045, 1059–60 (9th Cir. 2010) (emphasis added). Here, IFS has pleaded that Woolsey and the League intend to engage in the political process and in activities prohibited under Texas election law soon.

At any rate, IFS sufficiently alleges that the League is a political committee. Under Texas law, a political committee is a group "acting in concert with a principal purpose of accepting political contributions or making political expenditures." Tex. Elec. Code Ann. § 251.001(12). Here, IFS alleges that the League is a general-purpose committee, registered in

Texas since May 2022, that intends to be active in Texas elections in the future. General-purpose committees are defined under Texas law to include "political committee[s]" that meet certain additional criteria, meaning that the League is a political committee. *Id.* § 251.001(14). Further, while IFS admits that the League has not yet made political contributions or expenditures, its principal purpose—"support[ing] candidates" with anti-Marxist ideologies in future elections—necessarily includes these activities.

So too is Woolsey a candidate. Under Texas law, a candidate is a person who "takes affirmative action" towards election for public office. *Id.* § 251.001(1). Examples of "affirmative action[s]" include "making . . . a public announcement of a definite intent to run for public office in a particular election." *Id.* § 251.001(1)(E). Here, Woolsey is an elected official who signed and submitted a public declaration to the district court stating, "I intend to run for re-election and intend to start raising money for that purpose in the near future." Because both Woolsey and the League qualify as a candidate and a political committee, respectively, IFS's claims are ripe. We need not "wait and see" precisely how their political activities will develop "before evaluating [IFS's] First Amendment claims." *See Mahmoud v. Taylor*, 145 S. Ct. 2332, 2358 (2025).

The Commissioners also argue that even if there were a future investigation into IFS for violating Section 253.094, a vote of six Commissioners would be needed to initiate enforcement of the statute. Tex. Gov't Code Ann. § 571.171(a). Because only five Commissioners voted in favor of the interpretation contained in the Advisory Opinion, the Commissioners believe that any enforcement is contingent upon events that may or may not occur. We recently rejected a similar argument: "nothing binds [any] Commissioner here—he . . . could change his mind and decide [IFS's proposed actions] *do* violate the statute." *Turtle Island Foods, S.P.C.*, 65 F.4th at 218. Further, new Commissioners are appointed every four years,

No. 24-50712

Tex. Const. art. III, § 24a(c), and new Commissioners may adopt the view of the five who voted in favor of the Advisory Opinion. *See Turtle Island Foods, S.P.C.*, 65 F.4th at 218.

IFS's claims are ripe for adjudication.

IV

We now turn to the asserted immunities. In their motion to dismiss, the Commissioners submitted that IFS's official-capacity claims were barred by sovereign immunity and that the individual-capacity claims were barred by qualified immunity. On appeal, the Commissioners contend that quasi-judicial immunity also bars the individual-capacity claims. We address each of these immunities in turn.

A

The Eleventh Amendment to the United States Constitution typically deprives federal courts of jurisdiction over claims against a "state official in his official capacity." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014); U.S. Const. amend. XI. Under *Ex parte Young*, however, a plaintiff may "sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)); *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 493 (5th Cir. 2020) (en banc) (Elrod, J., concurring). The *Ex parte Young* exception applies if the official has "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Tex. All. for Retired Ams.*, 28 F.4th at 672 (citation omitted); *City of Austin v. Paxton*, 943 F.3d 993, 999 (5th Cir. 2019). This analysis "significantly overlap[s]" with Article III standing. *City of Austin*, 943 F.3d at 1002 (citation omitted).

The district court concluded that sovereign immunity did not bar the claims here, even though it found standing lacking, because IFS alleged "that if it pursues its intended pro bono representation of political candidates or committees, it will be subject to consequences that can be and will be enforced by the [Commission]."

We agree. Under Texas law, the Commissioners "shall administer and enforce" Title 15 of the Texas Election Code, which includes Section 253.094. Tex. Gov't Code Ann. § 571.061(a)(3). In fact, Texas law vests the Commissioners with the "exclusive jurisdiction" to make initial determinations of state election-law violations before a prosecuting attorney can bring a criminal prosecution. *Ex parte Charette*, 2024 WL 4138710, at *10 (Tex. Crim. App. Sept. 11, 2024), *reh'g granted* (Jan. 15, 2025); *see also* Tex. Gov't Code Ann. § 571.171(a). As addressed above, there is no indication that they will not initiate enforcement here. *Ex parte Young* therefore applies. *See K.P. v. LeBlanc*, 627 F.3d 115, 124–25 (5th Cir. 2010) (applying *Ex parte Young* where state law vested the defendant board members with enforcement authority).

The district court did not err in concluding that the *Ex parte Young* exception applies. Consequently, IFS's claims against the Commissioners in their official capacities may proceed.

B

To defeat a defendant's invocation of qualified immunity, "a plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). We may address either prong first. *See id.* at 421–22. Here, we address only the second.

"[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Guerra*, 82 F.4th at 285 (alteration in original) (citation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). The right should be framed with "specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019).

Here, IFS frames its right as the right "of nonprofit corporations to associate, speak, and petition in the form of pro bono litigation against the government." Assuming that it and other nonprofit corporations enjoy this right, IFS cannot show that it is clearly established.

IFS cites several cases, including the seminal Supreme Court case of *NAACP v. Button*. In that case, the Court struck down a Virginia law that outlawed certain forms of client solicitation and concluded that the NAACP had a right to provide nonprofit legal services as "a form of political expression." 371 U.S. at 423, 429. *Button*, though, did not address political-contribution bans, which are central to this dispute. IFS also cites *In re Primus*, 436 U.S. 412 (1978). That case ratified *Button*'s protections for attorneys to engage in client solicitation, but it dealt with lawyer disciplinary rules and, like *Button*, says nothing about political contributions. *See id.* at 426–39. IFS cites several other cases for the proposition that the government may not interfere with a lawyer's representation of her client.

But while *Button* and its progeny may establish a right for a nonprofit entity to solicit and represent its chosen clients, states like Texas have a countervailing interest to craft laws regulating political campaigns and contributions. *See, e.g.*, *Reisman*, 764 F.3d at 443. In *Reisman*, for example, we rejected a corporation's challenge to Section 253.094(a) because Texas

had a sufficient government interest in avoiding the appearance of corruption and adequately tailored its law to serve that interest. *Id.* at 441–45.

No case that the parties have cited addresses which interest must prevail here—either the nonprofits' interest in client solicitation, or Texas's interest in avoiding the appearance of corruption in its elections. Consequently, we cannot say that "every reasonable official would have understood that what he is doing violates" IFS's right, meaning the right is not clearly established. *Guerra*, 82 F.4th at 285 (citation omitted); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021) ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." (citation omitted)).

The district court did not err in dismissing IFS's individual-capacity claims for qualified immunity. Because we conclude that qualified immunity applies, we need not address quasi-judicial immunity, which would independently bar the individual-capacity claims.

\*    \*    \*

In conclusion, the district court erred when it concluded that IFS lacked pre-enforcement standing and that its claims were not ripe. IFS's complaint sufficiently alleges that IFS has an intent to engage in a prohibited course of conduct that is affected by a constitutional interest, and that if it so engages, it will face enforcement under Texas law. No further factual questions require resolution for the adjudication of its claims.

However, the district court did not err in concluding that qualified immunity barred IFS's individual-capacity claims and that the *Ex parte Young* exception to sovereign immunity applied, meaning that only IFS's official-capacity claims may proceed.

No. 24-50712

Accordingly, we REVERSE in part, AFFIRM in part, and REMAND for further proceedings not inconsistent with this opinion.[6]

---

[6] IFS also contends that the district court erred when it dismissed IFS's motion for summary judgment as moot.  It provides considerable briefing on the merits of its First Amendment claims and requests that we remand this case with instructions to grant IFS's motion for summary judgment.  We find no error in the district court's decision to moot the motion for summary judgment following its order on the Commissioners' motion to dismiss.  In light of the district court's conclusion that IFS lacked standing, the district court had no jurisdiction to resolve that motion.  *Murthy*, 603 U.S. at 57 ("'[I]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." (citation omitted)).  We decline to address IFS's First Amendment claims and leave them for the district court to explore in the first instance.  *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 393 (5th Cir. 2024).