UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

INSTITUTE FOR FREE SPEECH, §
§
    *Plaintiff,* §
§
v. § No. 1:23-cv-01370-DAE
§
JAMES TINLEY, in his official capacity as §
Executive Director of the Texas Ethics §
Commission, et. al, §
§
    *Defendant.* §

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
SECOND MOTION FOR SUMMARY JUDGMENT**

    James Tinley, in his official capacity as the Executive Director of the Texas Ethics Commission, along with the Commissioners who have been sued in their representative capacities (the "Commission"), submit this response to Plaintiff's Second Motion for Summary Judgment (Dkt. 57) (the "Motion").

**INTRODUCTION**

    As this Court has explained, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"

*DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1861 (2006) (Roberts, J.) (internal quotations omitted). No matter the cause, under core constitutional standing principles, "[f]ederal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Sometimes, in a plaintiff's zeal to strike down state statutes in the name of the First Amendment, these fundamental principles get lost. This is most certainly the case here.

Plaintiff Institute for Free Speech ("IFS") is a claimed non-profit corporation that actively solicits clients and advertises its efforts to file lawsuits across the county on First Amendment grounds.  A sample of the content from IFS's website:

> If you agree with us that free speech is essential, that government should not restrict its critics, and that everyone has the right to support causes they believe in free of government interference, then you should join us in the fight to save the First Amendment from overreaching politicians and bureaucrats.  The time to reclaim our liberty is now.[1]

IFS's zeal in this litigation (and assuredly other pieces of litigation across the country) is a prime example of a litigant attempting to secure rulings of its choosing—treating the federal judiciary as a roving commission—while paying lip service to fundamental Article III standing requirements.

IFS's "second" motion for summary judgment is both premature and meritless.  IFS seeks both facial and as-applied invalidation of a long-standing Texas statutory ban on corporate campaign contributions—which has been declared constitutional by both the United States Supreme Court and the Texas Supreme Court—without complying with any requests for discovery.  Dkt. 55.  At the same time IFS seeks a final ruling on the *merits* (or lack thereof) of its constitutional claims, it stiff-arms the Commission's efforts to discover, as a factual matter, whether (1) IFS actually possesses (not alleges) standing to bring claims and (2) whether  any viable as-applied challenge exists based on the facts about IFS and the "potential clients" it says it wants to represent.

Exactly as in its prior motion for summary judgment, IFS again submits *declarations of supposed facts* in support of its constitutional challenges then refuses to permit the Commission an opportunity through discovery to test the accuracy of those declarations or explore what IFS and its "potential clients" have actually done to position themselves to seek relief from this Court.

---

[1]Accessed at *Homepage – Your Rights* (Nov. 19, 2025), https://www.ifs.org/your-rights/.

By filing declarations with its motions for summary judgment on the merits, IFS acknowledges it is asking the Court to make a merit-based decision on what IFS says it has done and plans to do, and what "potential clients" of IFS say they have done and plan to do. Respectfully, however, this litigation is now past any surface-level "trust me I can prove it" stage.[2]

IFS cannot properly ask this Court to invalidate a state corporate campaign contribution ban of the type the United States Supreme Court has unequivocally declared constitutional. *Fed. Elec. Comm'n v. Beaumont*, 123 S. Ct. 2200, 2211 (2003). Knowing that, IFS attempts to spin this as a merits-based challenge, inviting the Court to act as a "roving commission" that Article III forbids. The Court should hold IFS to the same standing requirements that apply in every case—even a First Amendment challenge—before reaching the merits.

Even if the Court were to reach the substance of the motion—without first permitting discovery into standing and the merits—the motion should still fail. Not only does binding and controlling precedent uphold corporate campaign contribution bans, but IFS's arguments rest on inapposite precedent and a fundamental misunderstanding of First Amendment jurisprudence. When the Court addresses the merits, IFS's claims for invalidating this state law must be measured against the compelling state interest, long recognized by the United States Supreme Court, in preventing political corruption.

## PROCEDURAL HISTORY

In January 2022, IFS requested an advisory opinion from the Commission on whether Texas state law permits corporations to provide pro bono legal services to political candidates and political committees without violating the Texas state law prohibition on corporate political contributions. Dkt.1 at 17; *see also* TEX. ELEC. CODE § 253.094. An advisory opinion from the

---

[2]The Commission filed a motion to compel discovery. Dkt. 55. IFS has actively thwarted all of the Commission's efforts to obtain admissible, relevant evidence. *See* Dkt. 59; Dkt. 61.

Commission serves as a defense in a potential enforcement proceeding and does not represent or create an enforcement proceeding. TEX. GOV. CODE § 571.097. In December 2022, the Commission adopted Ethics Advisory Opinion No. 580 ("EAO No. 580"), which concludes that pro bono legal services, when provided in connection with a person or group's political activity, are in-kind contributions under the Texas Election Code and thus may not be provided lawfully by corporations. Dkt. 1 at 25-28.

On the heels of asking for and receiving the Commission's advisory opinion, IFS filed its complaint asserting facial and as-applied challenges to Section 253.094 of the Texas Election Code, followed immediately by a motion for summary judgment. Dkt. 20. The Court dismissed the case and denied the motion for summary judgment as moot. Dkt. 40. The Fifth Circuit affirmed aspects of this Court's ruling but remanded IFS's First Amendment challenges against the Commission for further proceedings. Dkt. 44. The Fifth Circuit found "no error in the district court's decision to moot the motion for summary judgment following its order on the Commissioners' motion to dismiss." *Institute for Free Speech v. Johnson et. al*, 148 F.4th 318, 335 n.6 (5th Cir. 2025). On remand and before any discovery could be conducted, IFS filed its "second" summary judgment motion on October 30, 2025, attaching the same four declarations from IFS witnesses as purported evidence. Dkt. 57-2 at 3–5, 6–8, 9–17, 57–59; Dkt. 22 at 3–5, 6–8, 9–17, 57–59.

## **ARGUMENT AND AUTHORITIES**

I. **IFS's summary judgment motion is premature because the Commission has been unable to conduct discovery.**

Summary judgment should be denied when the non-moving party has not had a fair and adequate opportunity to conduct discovery. *See* FED. R. CIV. P. 56(c)-(d); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of

summary judgment, ***after adequate time for discovery*** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (emphasis added)); *see also Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266–67 (5th Cir. 1991); *Phongsavane v. Potter*, No. CIVASA05CA0219-XR, 2005 WL 1514091, at *5 (W.D. Tex. 2005).

Here, due to the recalcitrance of IFS and the two non-party "potential clients" upon which IFS pins its claims, the Commission has had *no* discovery. Several unresolved issues of fact remain, which should preclude summary judgment, including (1) IFS's standing to pursue any of its claims, (2) its as-applied challenge to the corporate contribution ban (i.e., what is the ban being applied to?), and (3) the balancing test that courts apply in adjudicating claims to invalidate statutes.

Tellingly, IFS's declarations of Chris Woolsey, Cary Cheshire, David Keating, and Jacob Huebert raise several fact questions that need to be tested and resolved before entertaining a summary judgment motion, including averments about:

- The residency of an individual and a claimed general purpose political committee ("GPAC") IFS claims it wants to represent. Dkt. 57-2 at 3, 6–7.

- The intent of the individual to run for office and the GPAC to run a campaign, including averments about spending money in a certain fashion and advertising in a certain way. Dkt. 57-2 at 4, 7.

- The feelings of this individual and GPAC about a requirement under state law regarding political campaign signage. Dkt. 57-2 at 4, 7.

- Whether the individual and the GPAC cannot afford to pay lawyers. Dkt. 57-2 at 4, 8.

- Beliefs the individual and the GPAC have about being subject to liability under state law. Dkt. 57-2 at 4–7.

- Whether IFS offered to represent the individual or the GPAC. Dkt. 57-2 at 5, 8.

- The non-profit nature and residency of IFS. Dkt. 57-2 at 4, 8.

- The funding sources to IFS.  Dkt. 57-2 at 10.

- The activities of IFS in "tak[ing] on legal cases that impact free political speech rights." Dkt. 57-2 at 10.

- The pro bono nature of legal services that IFS allegedly provides.  Dkt. 57-2 at 10.

- Concerns IFS (or its apparently non-lawyer representative) has about providing claimed pro bono services in light of Texas law restricting corporate contributions to political campaigns.  Dkt. 57-2 at 10–15.

- Claimed "opportunities" for representation that IFS has allegedly passed on given the claimed concerns.  Dkt. 57-2 at 15.

- The impact an advisory opinion from the Commission had on "resolving" the concerns allegedly held by IFS.  Dkt. 57-2 at 11.

- Whether an advisory opinion from the Commission gave rise to concerns by IFS (or its representative) about a "considerable risk of prosecution or civil liability."  Dkt. 57-2 at 58.

- Beliefs IFS (or its representative) have that IFS cannot provide pro bono legal services to people or entities it wants to represent.  Dkt. 57-2 at 10–11.

- Beliefs IFS has that its claimed rights "have been chilled" as a result of issuance by the Commission of an advisory opinion.  Dkt. 57-2 at 9, 15–16.

- Beliefs IFS has that its claimed rights have been burdened in Texas counties.  Dkt. 57-2 at 11.

- Beliefs IFS (or its representative) have that other organizations cannot provide pro bono legal services to people or entities they want to represent. Dkt. 57-2 at 16.

- The claimed benefits of the Commission's advisory opinion benefitting the Commission itself or incumbent officeholders in Texas.  Dkt. 57-2 at 16–17.

*See generally* Dkt. 57-2 at 3–17, 57–59.

Furthermore, the subject matter of this case, a civil rights case seeking to invalidate a provision of state law on constitutional grounds, inevitably involves discovery to help determine the competing individual and state interests at issue.  *See, e.g.*, *Zimmerman v. City of Austin*, 861 F.3d 378 (5th Cir. 2018) (deciding a First Amendment challenge to campaign-finance laws after discovery and bench trial); *Catholic Leadership Coalition of Tex. v. Reisman*, No. A-12-CA-566-

SS, 2013 WL 2404066 (W.D. Tex. 2013) (ruling on cross-motions for summary judgment in challenge to campaign-finance laws after allowing the parties to complete discovery).  Indeed, the Fifth Circuit opinion that remanded part of this case for further proceedings alluded to these issues. *Johnson*, 148 F.4th at 335 n.6.

Importantly, IFS's as-applied challenge to the Texas Election Code involves facts concerning how and whether the law will apply to the plaintiff seeking to invalidate it.  *See generally Justice v. Hosemann*, 771 F.3d 285, 292 (5th Cir. 2014) (discussing that the requirements for an as-applied challenge are different than those of a facial challenge); *see* Dkt. 57 at 2–3; *see* Dkt. 57-1 at 9–11, 15.  To review an as-applied challenge, this Court would need a developed factual record.  *See id.*  Significantly, the particularized facts help courts "issue a narrowly tailored and circumscribed remedy."  *Id.* (citations omitted).

While the Fifth Circuit found that IFS sufficiently pled its claims, IFS now must prove them.  *E.g.*, *Lujan v. Defenders of Wildlife,* 112 S. Ct. 2130, 2136-37 (1992) (holding that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

As if it were not obvious given the nature of the allegations IFS makes and the declarations it tenders to support of its motion, the Commission does not have access to the information and documents needed to develop a record on the merits.  *See Rally's Inc.*, 939 F.2d at 1267. Accordingly, IFS's "second" motion for summary judgment is as premature as its first.  In the meantime, the Court is actively addressing the Commission's motion to compel discovery responses.  Dkts. 55, 65.

**A. This Court should not grant IFS's as-applied challenge due to a genuine issue of material fact.**

To resolve an as-applied challenge, a court (or jury) must determine whether the application of the challenged statute to the facts of the plaintiff's case would be in violation of its constitutional rights. *U.S. v. Simien*, 655 F. Supp. 3d 540, 548 (W.D. Tex. 2023), *reconsideration denied*, No. SA-22-CR-00379-JKP, 2023 WL 3082358 (W.D. Tex. Apr. 25, 2023). Development of a record is needed to determine whether the Texas Election Code impermissibly impairs IFS's First Amendment rights. *E.g., Phillips v. Collin Community College Dist.*, 701 F. Supp. 3d 525 (E.D. Tex. 2023) (where the court denied a summary judgment motion because there was a genuine issue of material fact regarding whether the law, as applied, impaired a plaintiff's First and Fourteenth Amendment rights).

As-applied challenges are only available if a plaintiff can establish a "reasonable probability" that a claimed government action will subject the plaintiff to cognizable injuries. *Buckley*, 96 S. Ct. 612, 661. IFS does not carry its burden in its pending motion for summary judgment to establish cognizable injury, much less as a matter of law. For example, IFS fails to show specific evidence of past or present harassment of members related to their associational ties, any harassment IFS faces, any pattern of threats or harassment, or any specific instances of public hostility towards IFS. Dkt. 57-2 at 3–17, 57–59. Genuine issues of material fact regarding the impact of the law on IFS have always underlaid this case, and as discovery has not even started those issues remain.

## II. Even if IFS's motion was ripe for the Court's consideration, IFS's motion is seeking to invalidate the type of law the United States Supreme Court has explicitly held does not violate the First Amendment.

### A. Corporate contribution bans have been upheld by the United States and Texas Supreme Courts.

IFS's effort to invalidate the Texas corporate campaign contribution ban is tilting at windmills, as demonstrated by a review of the United States Supreme Court decision in *Beaumont*.

> In sum, our cases on campaign finance regulation represent respect for the "legislative judgment that the special characteristics of the corporate structure require particularly careful regulation." And we have understood that such deference to legislative choice is warranted particularly when Congress regulates campaign contributions, carrying as they do a plain threat to political integrity and a plain warrant to counter the appearance and reality of corruption and the misuse of corporate advantages. As we said in *Colorado Republican,* "limits on **contributions** are more clearly justified by a link to political corruption than limits on other kinds of ... political spending are (corruption being understood not only as *quid pro quo* agreements, but also as undue influence on an officeholder's judgment, and the appearance of such influence)."

*Beaumont*, 123 S. Ct. at 2207 (citations omitted) (quoting *Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 103 S. Ct. 552, 554 (1982) and *Fed. Election Comm'n v. Colorado Republican Fed. Campaign Committee*, 121 S. Ct. 2351, 2358 (2001)). Every state, including Texas, has a specific interest in avoiding "war-chest corruption" and its presence in elections, as well as closing avenues of circumventing campaign contribution limits by way of unrestricted corporate giving. *Id.*; *see also* **Exhibit A** (declaration of James Tinley).

The Supreme Court has drawn a clear distinction between contexts where the state has a compelling interest, such as the prevention of corruption and its appearance in elections, and those where the state's interest is comparatively weaker. Preventing political corruption, particularly in matters involving elections and campaign finance, is as a matter of law a compelling interest. *Id.* at 2207 ("not only has the original ban on direct corporate contributions endured, but so have the original rationales for the law"). This is not a close question. The Supreme Court stated that the importance of this particular interest against corruption and its appearance "has never been doubted." *First Nat'l Bank of Boston v. Bellotti*, 98 S.Ct. 1407, 1422 n.26 (1978) (citations omitted).

There is no daylight between the Supreme Court upholding the federal ban on corporate campaign contributions in *Beaumont* and IFS's attempt to challenge this Texas corporate campaign contribution ban.

First, IFS claims to be a non-profit advocacy corporation. In *Beaumont*, the plaintiff raising the First Amendment challenge was a non-profit advocacy corporation. *Beaumont*, 123 S. Ct. at 2204. The Supreme Court held that "applying the prohibition to nonprofit advocacy corporations is consistent with the First Amendment." *Id.* at 2203. The Supreme Court explicitly recognized the anti-corruption interest is just as important when dealing with advocacy organizations. *Id.* at 2209 ("But concern about the corrupting potential underlying the corporate ban may indeed be implicated by advocacy corporations.")

Second, the Texas corporate contribution campaign ban is of long standing. The Supreme Court acknowledged that "federal law has barred corporations from contributing directly to candidates for federal office" since 1907. *Id.* The Texas corporate campaign statute has been in place since 1951, although the federal law enacted a similar prohibition earlier. Tex. H.B. 6, 52d Leg., R.S., at 1189–91 (Tex. 1951) (copy attached as **Exhibit B**).[3]

Third, the corporate campaign contribution bans (federal and state) are exceedingly similar. The federal ban provides as follows:

> It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization, to make a contribution or expenditure in connection with any election … for any candidate, political committee, or other person knowingly to accept or receive any contribution prohibited by this section, or any officer or any director of any corporation

---

[3] Corporate contribution bans were enforced federally prior to being enacted in Texas. The Tillman Act of 1907 was the first federal law to regulate campaign finance, and it prohibited corporations and national banks from making monetary contributions to federal election campaigns. *See* Tillman Act of 1907, ch. 420, 34 Stat. 864.

or any national bank or any officer of any labor organization to consent to any contribution or expenditure by the corporation, national bank, or labor organization, as the case may be, prohibited by this section.

52 U.S.C. § 30118.

The Texas state ban provides as follows:

"(a) A corporation or labor organization may not make a political contribution that is not authorized by this subchapter. …

(c) A person who violates this section commits an offense.  An offense under this section is a felony of the third degree."

TEX. ELEC. CODE § 253.094.

The Texas Supreme Court has confirmed this lack of daylight between the federal and state laws in a decision declining to grant a constitutional challenge to the Texas corporate campaign contribution ban.  *King St. Patriots v. Texas Democratic Party*, 521 S.W.3d 729, 742–43 (Tex. 2017) ("Only the Supreme Court has the 'prerogative ... to overrule one of its precedents.' … Our role is simply to 'say what the law is,' not prognosticate how the law could change.  Applying *Beaumont*, we conclude sections 253.091 and 253.094 of the Texas Election Code are not unconstitutional.") (quoting *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016); *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

Just as there is no daylight between the federal corporate campaign contribution ban and its Texas state counterpart at issue here, there is no daylight for IFS to make a credible constitutional challenge to Texas Election Code § 253.094 in this case.

**B.  EAO No. 580 applies the Texas corporate campaign contribution ban.**

IFS sometimes lapses by referring to its case as one about a Commission "regime" or "ban." Dkt. 57-1 at 1, 3, 9, 12, 13, 15, 16, 17.  However, IFS is not seeking to invalidate a Commission policy, but instead, seeks to invalidate a Texas law that the Commission is bound to follow.  The Election Code is unequivocal in prohibiting corporations from making political contributions to

candidates and political committees.  TEX. ELEC. CODE § 253.094.  A "political contribution" is either a "campaign contribution" or an "officeholder contribution." *Id.* at § 251.001(5).  A campaign contribution is any "contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure." *Id.* § 251.001(3).

A contribution is defined as "a direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer." *Id.* at § 251.001(2).  An "in-kind contribution" is a type of contribution and is defined as "a contribution of goods, services, or any other thing of value that is not money, and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make the contribution." *Id.* at § 251.001(21); 1 TEX. ADMIN. CODE § 20.1 ("A discount is an in-kind political contribution unless the terms of the transaction reflect the usual and normal practice of the industry and are typical of the terms that are offered to political and non-political persons alike, or unless the discount is given solely in order to comply with §253.041 of the Election Code.").

The term "in connection" is construed broadly.  *Cavin v. Abbott*, 545 S.W.3d 47, 70 (Tex. App.—Austin 2017, no pet.) (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017)), *but see Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000) (construing "in connection with a campaign" to mean only expenditures to fund express electoral advocacy in the context of direct campaign expenditures made by a non-candidate).  The Commission has previously interpreted this phrase to encompass litigation costs not only for lawsuits that are directly related to campaign activity, but also lawsuits that have a more indirect relationship to a person's status

as a candidate. *See*, *e.g.,* Tex. Ethics Comm'n Op. No. 533 (2015) (pro bono legal services for defending against a defamation lawsuit).

Within that statutory and precedential context, the Commission concluded in EAO No. 580 that valuable legal services are in-kind contributions when given freely to candidates or political committees with the intent that the services be used in connection with a campaign for elective office or on a measure. EAO No. 580 (copy attached as **Exhibit A-2**). It further concluded that pro bono litigation on a plaintiff's status as a candidate or political committee is connected with a campaign, bringing that litigation within Section 253.094's ambit. *Id*. As the Commission explained in its opinion, the consequences of its interpretation are not as dramatic as IFS suggests:

> Candidates may file lawsuits to challenge the law. They may accept pro bono representation to challenge the law. Alternatively, they may use their political contributions to pay for such litigation. *See* Tex. Ethics Comm'n Op. No. 219 (1994). They may even be represented by corporations, as long as they pay a fair market rate for the representation.

EAO No. 580.

Indeed, even other campaign advocacy nonprofits disagree with IFS's position in this case. The Campaign Legal Center ("CLC") submitted a comment on the draft opinion recognizing "well settled" law that "corporations—whether nonprofit or for-profit—have no constitutional right to make in-kind contributions to candidates." **Exhibit A-1**. CLC agreed that "is as true in the context of free legal services as it is in the context of free political advertising." *Id*. CLC concluded that "Texas may therefore constitutionality prohibit corporations from making contributions in the form of free legal representation of candidates for elected office." *Id.*

### C. IFS's cited authority does not address the state interest involved in this case and is therefore inapposite under any level of review.

IFS asserts the Court should apply strict scrutiny to its review of Texas's ban on corporate political contributions, but the level of scrutiny applied to First Amendment cases vary depending

on the importance of the political activity involved. *See Beaumont*, 123 S. Ct. at 2203 ("When reviewing political financial restrictions, the level of scrutiny is based on the importance of the political activity at issue to effective speech or political association, and restrictions on political contributions have long been treated as marginal speech restrictions subject to relatively complaisant First Amendment review because contributions lie closer to the edges than to the core of political expression."); *Buckley v. Valeo*, 96 S. Ct. 612, 638 & 670 (1976) (applying an exacting scrutiny standard requiring a vital interest to provisions limiting individual contributions to campaigns, noting that "[e]ven a significant interference with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms") (internal citations omitted). Additionally, corporate contribution bans may not call for narrow tailoring. *Beaumont*, 123 S. Ct. at 2210 ("instead of requiring contribution regulations to be narrowly tailored to serve a compelling governmental interest, a contribution limit involving significant interference with associational rights passes muster if it satisfies the lesser demand of being closely drawn to match a sufficiently important interest.") (internal citations omitted)).

This case does not require strict scrutiny. Because the level of scrutiny is based on the importance of political activity, a lower standard of review applies here. *See id.* at 2203. Because contributions are not the heart of political expression, restrictions on political contributions are marginal speech restrictions subject to a relatively complaisant review. *Id.* at 2203. At most, this Court should look at this law to see if it is closely drawn to a sufficiently important interest. *See id.* at 2210.

However, under any level of scrutiny, IFS's motion should be denied because the prevention of corruption and its appearance has been continuously held to be a compelling state

interest sufficient to support prohibitions on corporate political contributions. *Id.* at 2206 ("not only has the original ban on direct corporate contributions endured, but so have the original rationales for the law.  In barring corporate earnings from conversion into political 'war chests,' the ban was and is intended to 'preven[t] corruption or the appearance of corruption.'") (quoting *Fed. Election Commn. v. Natl. Conservative Political Action Comm.*, 105 S. Ct. 1459, 1468–1469 (1985).  "'The importance of the governmental interest in preventing [corruption] has never been doubted.'" *Id.* (quoting *First Nat.'l Bank of Boston v. Bellotti*, 98 S. Ct. 1407, 1422 n. 26 (1978).

Thus, even if IFS were correct that the law must meet heightened scrutiny, which is not required under *Beaumont* and *Buckley*, Texas's regulation survives because it protects not only against actual corruption, but also the appearance of corruption, which itself can erode public trust in government.  *Beaumont*, 123 S. Ct. at 2206–07.  IFS's authorities do not grapple with this dimension of governmental interest, public confidence in elections, making them further inapposite.

The authorities IFS attempts to rely on simply do not implicate the dangers of corruption, or its appearance, that corporate funds pose.  IFS's cited authorities are inapposite because they do not involve this recognized governmental interest; rather, they concern other purported interests, such as regulation of the legal profession, where the Court has found no sufficient justification for restricting expression.  *See, e.g.*, *Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729, 2732–33 (2011) (prohibiting the sale of violent video games to minors); *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2724 (2010) (combating terrorism); *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2231 (2015) (aesthetic appeal and traffic safety).

Many of the cases cited by IFS involve the government's proffered interest in preventing barratry.  *See NAACP v. Button*, 83 S. Ct. 328, 340–41 (1963); *In re Primus*, 98 S. Ct. 1893, 1905

(1978).   But as the Fifth Circuit recognized here, "while *Button* and its progeny may establish a right for a nonprofit entity to solicit and represent its chosen clients, states like Texas have a countervailing interest to craft laws regulating political campaigns and contributions."  *Institute for Free Speech v. Johnson*, 148 F.4th 318, 334 (citing *Reisman*, 764 F.3d at 443).  In *Reisman*, for example, the Fifth Circuit rejected a corporation's challenge to section 253.094(a) because Texas had a sufficient government interest in avoiding the appearance of corruption and adequately tailored its law to serve that interest.  *Reisman*, 764 F.3d at 441–45; *see also Johnson*, 148 F.4th 318, 334 ("No case that the parties have cited addresses which interest must prevail here—either the nonprofit's interest in client solicitation, or Texas's interest in avoiding the appearance of corruption in its elections.").  Thus, these free speech holdings cannot be transposed to the election law context, where the risk of quid pro quo exchange is uniquely high.

Conversely, IFS's authority that does address the government's anti-corruption interest is distinguishable because the laws at issue in those cases do not concern prohibitions on corporate political contributions.  *See, e.g.*, *McCutcheon v. FEC*, 134 S. Ct. 1434, 1442 (2014) (aggregate contribution limits for individuals); *Citizens United v. FEC*, 130 S. Ct. 876, 880 (2010) (corporate independent expenditures); *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1641 (2022) (limits on campaign loan reimbursements).

In sum, the cases IFS relies on do not disturb the long-standing recognition that corporate contribution bans serve a compelling state interest in preventing corruption and its appearance.  The Texas Election Code provision IFS seeks to invalidate directly advances that compelling interest, remains "closely drawn" to the interest, and fully aligns with Supreme Court precedent sustaining analogous contribution limits.

**D.  The corporate contribution ban is a content-neutral restriction.**

This is not a case where viewpoint discrimination is a consideration.  The Texas statute is patently content-neutral because it targets the source of funding rather than any particular speech content.  *See generally Beaumont*, 123 S. Ct. at 2205–06.  Corporate contribution bans apply evenhandedly across political topics, do not control viewpoint, and focus on the manner of funding.

IFS claims the Commission's interpretation of the law constitutes viewpoint discrimination.  But this is not true even under IFS's expression of the Commission's position.  Dkt 57-1 at 9 ("The TEC's regime burdens other similarly situated corporations").  By its own allegations and motion, IFS does not contend, much less prove, that its "viewpoint" (whatever that may be) is burdened by the corporate campaign contribution ban more or differently than other similarly situated nonprofit corporations with differing beliefs.

**E.  The Texas corporate contribution ban is not preempted by federal law.**

IFS's preemption argument is opaque at best, but charitably it appears that IFS is making a "conflict preemption" argument.  *See La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 290 (5th Cir. 2025).  If that is IFS's argument, there is a well-established presumption against preemption in the case of a statute, like this one, that involves the exercise of police powers over elections.  *Id*. at 291.  Under the apparent variant of IFS's preemption argument, "a state law is preempted if it 'stands as an obstacle' to fulfilling a federal law's 'full purposes and objectives.'" *Id*.

IFS cites *Haywood v. Drown* and *Miller v. Bonta* in support of its argument that the Texas ban on corporate political contributions should be invalidated under the Supremacy Clause.  Dkt. 57-1 at 19.  However, both cases involved challenges to state laws affecting the rights, procedural protections, and remedies available to plaintiffs.  *See Haywood*, 556 U.S. 729, 736-37 (2009) (New York state law that divested state courts of general jurisdiction of their jurisdiction over any lawsuit

filed by a prisoner against state correction officers, including those filed under 42 U.S.C § 1983, depriving these plaintiffs of the right to receive attorney's fees, punitive damages, and injunctive relief); *Miller*, 646 F.Supp. 3d 1218 (S.D. Cal. 2022) (California state law denying attorneys' fee awards to plaintiffs in cases challenging firearm restrictions, even when they prevailed).

Conversely, the Texas state law prohibiting corporate political contributions does not alter any plaintiff's rights under § 1983. It does not alter the scope of any court's jurisdiction, nor does it alter the available relief or procedural protections afforded under § 1983. It merely prohibits corporations from providing things of value to candidates and political committees in connection with their political activities.[4] As stated above, the U.S. and Texas Supreme Courts have held corporate campaign contribution bans are constitutional. *Beaumont*, 123 S. Ct. at 2211; *King St. Patriots*, 521 S.W.3d at 742–43. This Court should follow binding case law.

## IV.    IFS Has Not Established Its Right to Injunctive Relief

IFS seeks to enjoin the Commission (albeit it is unclear whether IFS seeks a preliminary injunction in addition to a permanent injunction) from enforcing the Commission's "interpretation" of the law, but IFS fails to outline how it satisfies the standards for a permanent injunction, much less what such an injunction would look like. Haphazardly asserting that IFS's case meets the injunction standards, and that the loss of First Amendment freedoms are an irreparable injury is not sufficient to support a Court order enjoining the Commission.

To be entitled to a preliminary injunction, a party must show: (1) there is a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction is not granted, (3) that the substantial injury outweighs the threatened harm to the party they seek to

---

[4] For the same reason, IFS has no standing to pursue a § 1983 claim, because according to IFS's allegations—which have never been tested through discovery—it is not IFS but its "potential clients" that seek to bring such claims.

enjoin, and (4) that the injunction will not disserve the public interest. *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)). To prevail on a permanent injunction, the party must show actual success on the merits. *See Amoco Prod. Co. v. Vill. of Gambell*, 107 S. Ct. 1396, 1406 n.12 (1987) (noting that preliminary the plaintiff must show a likelihood of success on the merits rather than actual success); *see also VRC LLC v. City of Dallas*, 460 F.3d 607, 608 (5th Cir. 2006) (describing the factors for a permanent injunction).

IFS cannot satisfy the requirements for a preliminary injunction. First, IFS cannot show there is a substantial likelihood of success on the merits. At this stage, IFS must make a "clear showing" that it is "likely" to establish each element of standing and its claims. *See Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (citing *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008)). IFS's declarations do not support that there is a clear showing that is likely to establish standing or its facial, as-applied, and preemption challenges. As addressed in this response, IFS relies on case law that is not dispositive and not applicable here. Second, IFS cannot show that there is a substantial threat of irreparable injury because the corporate contribution ban has been Texas law for decades. IFS's declarations do not show how there is substantial harm if this Court continues the *status quo*. Dkt. 57-2 at 3–17, 57–59. Further, EAO No. 580 does not actually injure IFS. IFS's complaint lies with the law that has been on the books since 1951. TEX. GOV'T CODE § 571.097. Permitting discovery and the required steps of litigation before obtaining a court ruling is not going to cause any irreparable alleged injury or unjust delay. Third, the threatened injury of what IFS claims they might do does not outweigh the potential harm to the Commission. Fourth, the injunction would undermine the public's interest in seeking to prevent corruption and the appearance of corruption. This Court should not grant either a preliminary or

permanent injunction without determining the constitutionality of the relevant provisions of the Texas Election Code.

IFS cannot meet the burden for a permanent injunction.  IFS did not and cannot show that there is actual success on the merits to a facial and as-applied constitutional challenge without this Court reviewing evidence and hearing arguments at trial.  IFS has not established, much less as a matter of law, that it satisfies the factors for any injunctive relief.

**B. IFS is not entitled to declaratory relief.**

IFS further claims it is entitled to declaratory relief, but simply states the standard for declaratory relief is lesser than that of injunctive relief.  IFS does not allege what entitles it to declaratory relief.  As detailed above, IFS has not shown itself entitled to succeed on its facial and as-applied challenges to the Texas Election Code, much less as a matter of law.

## CONCLUSION

The Commission respectfully requests this Court deny IFS's motion for summary judgment without prejudice, pending the conduct of discovery.  There is no record on which IFS's constitutional challenges can be properly decided.  In the meantime, any request for the Court to consider the merits of IFS's claims—based on unexplored declarations—falls on its own weight, under controlling precedent.  Ultimately, once discovery is complete the Court then can determine the motion. For the foregoing reasons and for reasons that assuredly will be revealed through discovery, the Commission respectfully requests the Court deny IFS's motion for summary judgment.  The Commission also requests all other relief to which it may show itself to be entitled.

Respectfully submitted,

**BUTLER SNOW LLP**

By: */s/ Eric J.R. Nichols*
Eric J.R. Nichols
State Bar No. 14994900

eric.nichols@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Tel: (737) 802-1800
Fax: (737) 802-1801

Jose M. Luzarraga
State Bar No. 00791149
jose.luzarraga@butlersnow.com
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219-6258
Tel: (469) 680-5503
Fax: (469) 680-5501

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2025, a true and correct copy of the foregoing document was served on all counsel of record by filing with the Court's CM/ECF system.

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols