IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| INSTITUTE FOR FREE SPEECH, a nonprofit corporation and public interest law firm,<br><br>Plaintiff,<br><br>v.<br><br>JAMES TINLEY, in his official capacity as Executive Director of the Texas Ethics Commission, *et al.*;<br><br>Defendants. | No. 1:23-cv-01370-DAE-ML |

# PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANTS' EXPERT ANDREW STEWART CATES

## REPLY ARGUMENT

### I. Cates is a legal expert offering legal opinions

Mr. Cates is, in his own words, an expert on Texas election law. Cates's legal practice "focuses entirely on political law and nonprofit law." Dkt. 80-4, ¶ 1. He has written a "legal annotated practice guide" on the statutes, regulations, and advisory opinions under the TEC's jurisdiction. *Id.*, ¶ 4. And he admits that his "opinions in this matter are [his] expert opinions *as a Texas campaign finance lawyer*." Dkt. 80-3 at 9:14-22 (emphasis added). Those admissions may well suffice to end the inquiry. But there is even more cause for disqualification.

Defendants engaged Cates to supply inadmissible legal analysis based on his education and experience as a campaign-finance lawyer. Again, according to Cates's own report and testimony, Defendants hired him "to provide [his] *analysis of the relevant laws and regulations* regarding corporate contributions to candidates and officeholders in Texas." Dkt. 80-4, ¶ 2 (emphasis added). His "assignment" was to review the TEC's advisory opinion and other documents in this case to "provide an expert report on [his] thoughts as a stakeholder and attorney." Dkt. 80-3 at 7:14-20, 11:10-18. His assignment, thus, was improper at the outset.

Reviewing statutes, advisory opinions, and discovery documents in order to give thoughts as an attorney is classic legal work: the kind of work that clients pay Cates and other campaign-finance lawyers to do every day. Defendants admit that they designated Cates to provide testimony on issues such as whether "public interest organizations [may] provide pro bono legal services to political candidates without running afoul of [] state law," "the options ordinarily available to regulated entities seeking to conduct political activity" legally, and whether the issuance of an advisory opinion by the Commission" qualifies as an "enforcement action against IFS or anyone else under any of the laws challenged." Dkt. 81 at 2-3. These are all

legal questions, which require interpreting the laws at issue and applying facts to those laws. When Cates testified on these issues, *see, e.g.*, Dkt. 80-4, ¶¶ 3, 37-38, he offered inadmissible legal conclusions, *see Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

Moreover, Cates's report and deposition testimony are littered with legal conclusions about myriad topics. Defendants asked Mr. Cates to engage in legal analysis, and that is exactly what he did.

Cates opines, for example, that the TEC correctly interpreted the statutes at issue, see Dkt. 80-4, ¶ 3, Dkt. 80-3 at 30:1-13; that IFS's legal advocacy endangers its tax-exempt status as a 501(c)(3), see Dkt. 80-4, ¶ 34; Dkt. 80-3 at 19:5-7, 30:12-13; what the standards for "in connection with a campaign" and an "administrative" expense are under Texas law, Dkt. 80-4, ¶¶ 24-29; Dkt. 80-3 at 32:16-35:16; that the Fifth Circuit was only "likely correct" when it held IFS had standing, Dkt. 80-4, ¶¶ 19-20, 37; and that IFS has other lawful ways to provide its pro bono services, see Dkt. 80-4, ¶¶ 30-36; Dkt. 80-3 at 19:5-7, 30:12-13. Plaintiff's original brief explicitly specified all of these as examples of inadmissible legal conclusions (as well as identifying other examples). *See* Dkt. 80 at 10-13.

With only a few exceptions, see Dkt. 80 at 14, almost all of Cates's report and testimony is legal opinion. And Cates's legal opinions are improper and inadmissible even if they concern only one small part of the case, and do not reach the ultimate constitutional issue.

Though Cates often errs, IFS is not arguing that he is incompetent to perform legal analysis.[1] Rather, IFS argues that the rules do not permit Cates—no matter

---

[1] Except for his conclusions about tax law or IFS's tax status. Mr. Cates is not a tax lawyer and has no business opining on such issues. *See* Dkt. 80-4, ¶ 1. In fact, his tax analysis is simply wrong. *See* Dkt. 44-1 ("Further, IFS responds that it and

how experienced (or correct) he is as a campaign-finance lawyer—to offer his legal opinions into evidence. *See, e.g., Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997); *Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194, 198 (5th Cir. 1996). Legal conclusions are the exclusive domain of this court, no matter how accurate or experienced Mr. Cates may be.

## II. Defendants' attempt to recast Cates's legal analysis as experience-based opinions fails

Defendants cannot smuggle Mr. Cates's inadmissible legal conclusions into evidence by labeling these conclusions as his "experience" of professional legal practice and the legal industry. Giving legal opinions is, of course, the daily experience of most lawyers and often those opinions rely on real-world experience, not just abstract analysis. It is what clients pay for. But when that so-called "experience" intrudes upon the role of this court, it is inadmissible as expert testimony. Regardless of whether Cates's legal conclusions are based on his own analysis or the legal analysis of the regulated community of campaign finance lawyers as a whole, they are still inadmissible legal conclusions.[2]

The federal rules do allow for experience-based expertise for non-legal opinions, as the *Pipitone* decision (relied on by Defendants) and many other cases state. *See*

---

other nonprofit entities have represented non-Texas political candidates for years, as mentioned above. IFS regularly discloses these litigation activities to the Internal Revenue Service without issue.").

[2] Defendants contend that if Cates cannot testify as an expert, then this Court will be rendered unable to gather evidence about standing. *See* Dkt. 81 at 8. Not so. Nothing in Plaintiff's Rule 702 motion to exclude an expert prohibits Cates or any other witness from offering adjudicative evidence relevant to standing based on personal knowledge. *See* Dkt. 80 at 14. Defendants' argument shows that they are not seeking to introduce normal evidence. They are seeking to introduce legal conclusions about the constitutional question of standing, including whether IFS faces a threat of enforcement. This is improper.

*Pipitone v. Biomatrix*, Inc., 288 F.3d 239, 247 (5th Cir. 2002); *cf*. Dkt. 81 at 5, 10. But even a cursory examination of *Pipitone* demonstrates how categorically different Cates's supposed "experience" is from the expert experience at issue in that case. In *Pipitone*, a physician's personal observations and professional experience as a medical doctor enabled him to present expert testimony about the cause of a salmonella infection. 288 F.3d at 246-47. That is a classic expert opinion from a medical professional.

Here, in contrast, Defendants claim Mr. Cates's experience allows him to testify, for example, about which non-profit organizational structures can lawfully participate in politics, about what administrative processes for enforcement and advisory opinions exist in state law, about the rules and application of federal tax law, and about what legal consequences result from certain actions. These are obviously legal conclusions, and entirely off limits as a topic of expert testimony. Legal opinions do not become admissible simply because those opinions partly rely on the witness's own experience and are not stated purely in the abstract.

## III. Defendants are unable to provide a clear theory of relevance for Cates's opinions

Defendants fail to explain how Cates's testimony is relevant to this case in a simple or straightforward manner. Allegedly, Cates will "provide context," Dkt. 80 at 9, about the TEC's regulatory regime. But how will such supposedly "helpful context," *id.* at 10, about the legal industry in Texas actually assist this Court determine any fact in dispute? Defendants thus use the label "context" to attempt to obscure that their expert is offering inadmissible legal opinions.

IFS's claims in this case are mostly constitutional and arise solely under federal question jurisdiction. Industry debates within the Texas state campaign-finance law community about the meaning of "surprisingly complicated" state laws, *see* Dkt. 80-

4, ¶¶ 24-26, do not alter the meaning of the First Amendment as-applied to IFS's proposed activities. And Cates himself states that he has no opinion about the U.S. Constitution. *See* Dkt. 80-3 at 30:2-31:1; Dkt. 81 at 9.

Rather, Defendants seek to use Cates's testimony to distract from the constitutional questions at the center of this case and relitigate standing, thus avoiding the merits. They know that they lack a viable defense on the merits and will lose on strict scrutiny. Although they don't say so openly, presumably they want to argue, based on Cates's legal opinions, that IFS lacks standing, because allegedly, IFS doesn't face a threat of enforcement or some independent statutory bar (in the Internal Revenue Code) blocks IFS's proposed activity. Indeed, the TEC has made these legal arguments before, including unsuccessfully on appeal (Dkt. 44-1 at 12-13, 14-15); and it remains free to brief these issues as legal arguments attempting to attack standing if it chooses. Offering those legal opinions in the form of a lawyer's expert opinion, however, is patently improper. "[A]n expert may never render conclusions of law." *Goodman*, 571 F.3d at 399.

Even if Cates's legal opinions on state law or federal tax law are relevant to standing, they are still inadmissible legal opinions. The TEC cannot use Cates to launder its own legal arguments into so-called "expert testimony." Similarly, calling those legal opinions "context" does not make them admissible expert testimony. They are still just legal opinions.

## IV. This motion is timely and in accordance with the case schedule

Plaintiff's motion to exclude Mr. Cates as an expert witness is timely and appropriate. This Court's scheduling order required that any "objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 shall be made by motion . . . within thirty (30) days of receipt of the written report of the expert's proposed testimony, or within thirty (30) days of the expert's

deposition, if a deposition is taken, whichever is later." Dkt. 77 at 1. IFS deposed Mr. Cates on July 14, 2026, see Dkt. 80-4 at 4:1-3, so Plaintiff's motion seeking to exclude Mr. Cates's testimony was due by August 13.

Contrary to Defendants' suggestion, *cf.* Dkt. 81 at 2-3, there is no requirement that parties wait until trial or until a summary judgment motion is pending before they can move to exclude an expert. Indeed, this Court's scheduling order makes summary judgment motions due August 28—more than two weeks after the deadline for a Rule 702 motion. *See* Dkt. 77 at 2. Under this Court's scheduling order, "the appropriate time . . . to determine whether testimony offered by Cates," Dkt. 80 at 3, is admissible under Rule 702 is right now. If IFS had waited, it would arguably have waived the right to challenge those opinions.

## CONCLUSION

This Court should exclude Mr. Cates's legal analysis.

Respectfully submitted,

Dated: August 17, 2026

*s/Endel Kolde*
Endel Kolde
D.C. Bar No. 1782129
Nathan J Ristuccia[3]
Virginia Bar No. 98372
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, D.C. 20036
Tel: (202) 301-1664
Fax: (202) 301-3399
dkolde@ifs.org
nristuccia@ifs.org

*s/Tony McDonald*
Tony McDonald
Texas Bar No. 24083477
Connor Ellington
Texas Bar No. 24128529
LAW OFFICES OF TONY MCDONALD
1308 Ranchers Legacy Trl
Fort Worth, TX 76126
Tel: (512) 200-3608
Fax: (815) 550-1292
tony@tonymcdonald.com
connor@tonymcdonald.com

*Attorneys for IFS*

[3] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).